# Lycoming (now Citizens') Gas and Water Company *versus* Moyer.

1. Although prior to the adoption of the present constitution of this commonwealth corporations vested with the right of eminent domain were not usually liable for consequential damages, yet the legislature, in its grant of this right to a corporation, might so limit the exercise thereof, as to make it subject to the payment of such damages.

2. A water company was incorporated in 1865, with power to take the waters of any stream, "making compensation for the same." Its charter further provided, that "if, in the location of . . . . the works, an injury should be done to private property, and the parties could not agree upon the amount of compensation to be made to the owner," either party might apply to the court to appoint viewers. The company in constructing its works used the waters of a certain stream, diminishing materially the flow of water therefrom, through a certain mill race, about a mile and a half further down. The owner of the mill-race had purchased the right to use the water for his mill, from the owners of the land bordering on the stream at the point where the mill-race was built. *Held*, that the owner of said mill-race had a property, though of an incorporeal nature, in the waters of the stream, and that, under the terms of the charter of the water company, he was entitled to recover compensation for the injury he had sustained by the diminution in the flow of the water.

3. Pending an appeal by said owner, from a report of viewers assessing damages done him, the rights, franchises, and property of the water company, were sold at sheriff's sale under a mortgage. *Held*, that said owner's claim for damages was a continuing lien upon the corporate property, and that he could assert said claim by continuing the proceedings already commenced, as against the sheriff's vendee.

4. On the trial of an issue framed in the said proceedings to determine the damages to which the owner of the mill-race was entitled, the water company proposed to prove that, after its taking of part of the waters of the stream as aforesaid, a railroad company had constructed its road by the side of the mill, and across the mill-race in question, destroying the same, and that a recovery had been had for injuries sustained by the construction of the road as aforesaid, to the full value of the mill and mill-race. *Held*, that the evidence was properly excluded, because (1) the railroad company must be held to have made compensation having reference to the deterioration in value already caused by the water company, and (2) the railroad company took no water, but only caused an obstruction, so that the claim against it for damages was wholly unlike that against the water company.

5. Where property taken by a corporation in the exercise of the power of eminent domain, has already been deteriorated in value by the exercise of the same power by another corporation, the damages must be estimated with reference to the existing deterioration.

February 15th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

[Lycoming Gas and Water Co. *v.* Moyer.]

ERROR to the Court of Common Pleas of *Lycoming county :* Of January Term 1882, No. 154.

Upon the petition of Solomon Moyer, viewers were appointed, who filed a report appraising at $3,500 his damages caused by the Lycoming Gas and Water Company taking water from Mosquito run, thereby decreasing the flow of water in his mill-race. Moyer appealed from this award. Pending this appeal, the rights, franchises and property of the Lycoming Gas and Water Company became vested, by sheriff's sale under a mortgage, in the Citizens' Gas and Water Company, "subject to all the restrictions" imposed on the Lycoming Company; and the said Citizens' Gas and Water Company was, on December 3rd 1880, by order of court, substituted as defendant. A writ of error to this order was quashed by the Supreme Court, as prematurely taken, and the record was remitted.

The court below then directed an issue to be framed in the nature of an action of trespass quare clausum fregit, between Solomon Moyer, plaintiff, and the Citizens' Gas and Water Company, defendant. Plea, Not guilty, and a special plea.

On the trial, before CUMMIN, P. J., the following facts appeared :—The Lycoming Gas and Water Company was incorporated by Act of March 24th 1865 (P. L. 767), with power to take land and " so much of the waters of any stream, within three miles of the mouth of Lycoming creek . . . . which shall be necessary to them in the prosecution of their work . . . . making compensation for the same as hereinafter provided." Section 8 of the charter provided : " that if, in the location of the said works, an injury shall be done to private property, and the parties cannot agree upon the amount of compensation to be made to the owner," either party may apply to the Court of Common Pleas for the appointment of viewers, &c.

Mosquito run empties into the West Branch of the Susquehanna river immediately opposite the mouth of the Lycoming creek.

In 1857, Solomon Moyer, being the owner of a tract of land and saw-mill, had purchased from the owners of land situate on both sides of Mosquito run the right to take water from said run, through a mill-race on their land, for supplying his mill.

In 1869 the Lycoming Gas and Water Company, by virtue of the franchise vested in them by their charter, connected pipes with the water of Mosquito run, about a mile and a half above where Moyer's race was connected with the run. Moyer alleged that the flow of water in his mill-race was thereby decreased to an extent which prevented his use of his mill in the manner he had theretofore enjoyed it.

Defendant's counsel offered to prove (under the special plea) that in 1871 the Philadelphia and Erie Railroad constructed a

branch road along the side of the saw-mill of Solomon Moyer, and across the race which carried the water to said mill as a motive power, whereby the said saw-mill and water-power was destroyed; and that in proceedings had by said Moyer in the Common Pleas of Lycoming county, to No. 103 April term, 1872, the plaintiff in this case recovered $12,247, which defendants propose to show was the full value of said water-power and saw-mill prior to 1869. This offer for the purpose of showing that before this trial the same damages sought to be recovered for in this suit had been recovered upon in the suit against the said railroad company, and the same had been paid to said Moyer.

Objected to, because the injury, if any, which had been done by the Lycoming Gas and Water Company to the water-power of the plaintiff, occurred before the building of the railroad, and the railroad company were not legally liable for any injury which was done prior to the time that they entered upon the property.

THE COURT.—If the injury complained of, and for which an award of damages was given, occurred before the taking by the defendants in this case, thereby affecting the value of the mill property, the evidence offered might possibly be admitted; but it appears in this case, that the injury for which that award was given occurred after the taking of the water, therefore we think it is not evidence.

Objection sustained; offer overruled; exception.

Defendants' counsel presented, inter alia, the following points :—

3. That the right to take and use the water from Mosquito run being lawful under its charter, such franchise was covered by the mortgage executed by the Lycoming Gas and Water Company, and upon which mortgage the property and franchises were sold at sheriff's sale, and purchased by John W. Moffley, purchaser for himself and others. *Answer.* That point we affirm. Those franchises passed by that mortgage to the purchaser.

4. That the Citizens' Water and Gas Company of Williamsport, having taken title from John W. Moffley, the owner by sheriff's sale, of the property and franchises of the Lycoming Gas and Water Company, now own said property and franchises, discharged from all debts and claims against the original company for the consequential damages claimed by Solomon Moyer, and he cannot recover from the Citizens' Water and Gas Company. *Answer.* We decline to charge you as requested, in that point. So far as this issue is made up, they are parties to the record, and will be so considered by you. Whether there

is anything in that, it may possibly arise at another time. At the present, we refuse that point.

Verdict and judgment for the plaintiff for $9,602.76. The defendant took this writ of error, assigning for error, inter alia, the order of the court substituting the Citizens' Gas and Water Company as defendant; the rejection of defendant's offer of evidence above stated, and the answer of the court to its fourth point.

*R. P. Allen* and *Addison Candor* (*C. La Rue Munson* with them), for the plaintiff in error.—The alleged damage, caused by the Lycoming Gas and Water Company tapping Mosquito run a mile and a half above the plaintiff's mill-race, was purely *consequential,* and as such was not recoverable, prior to the Constitution of 1874: Koch *v.* Williamsport Water Co., 15 P. F. S. 288; Phila. & Trenton R. R. Co.'s Case, 6 Whart. 46. The charter of the Lycoming Gas and Water Company provides for compensation for an injury done to private property in the *location* of its works; this refers to *land* taken and occupied by the reservoir, gas manufactory, &c., not to the mere diversion of water. If that had been intended, an express provision to that effect would have been inserted in the charter, as was done in the Act incorporating the Williamsport Water Company, which provides for compensation to persons injured " by the diversion of the waters that may be used by the said company :" Act of April 18th 1853, P. L. 721.

But if Moyer had any right of recovery against the Lycoming Company, he should have pursued it against that company. Having allowed nine years to elapse without prosecuting his claim, either against that company, or in the distribution of the proceeds of its franchises and property, he cannot now claim against the Citizens' Water and Gas Company, who paid full value at the sheriff's sale, without notice of his dormant claim. The "restrictions" subject to which the Citizens' Company purchased, are those mentioned in the charter of the Lycoming Company, viz., that the company shall not exercise banking privileges, and shall not extend their pipes beyond a certain territory, &c. The court erred in substituting the Citizens' Company as defendant, and holding that they were liable to the plaintiff: Western Penna. R. R. Co. *v.* Johnston, 9 P. F. S. 290.

*H. W. Watson* and *Samuel Linn,* for the defendant in error.

[Lycoming Gas and Water Co. v. Moyer.]

Mr. Justice GORDON delivered the opinion of the court, March 13th 1882.

It is not open to debate that, prior to the Constitution of 1874, neither the Commonwealth nor its locum tenens was liable for consequential damages resulting from the exercise of the right of eminent domain. It is, however, just as well settled, that the legislature, in its grant of this right to a corporation, might so limit the exercise of that right as to make it subject to the payment of such damages.

The grant to the company defendant is made subject to the condition, " that if, in the location of said works, an injury shall be done to private property, and the parties cannot agree upon the amount of compensation to be made to the owner," viewers are to be appointed for the purpose of ascertaining and assessing the damages. The words here used are of the most general character. " Private property " necessarily includes everything that can be held or owned by private persons, and " injury" any, and every, damage to which it can or may be subjected. Now, that Moyer had property in the waters of Mosquito creek, though of an incorporeal nature, is certain: City of Reading v. Althouse, 12 Nor. 400.

This action was, therefore, well brought against the Lycoming Gas and Water Company, which had disturbed the plaintiff's right. But can the sheriff's vendee, which succeeded to the property rights and franchises of the corporation just named, be held for the damages resulting from the original taking of this water? We answer, yes; for Moyer's right could not be extinguished until it was paid for, or security given for payment, neither of which was done by the former company; hence, the plaintiff's claim was a continuing lien upon the corporate property, like the lien for purchase money in articles of agreement for the sale of land, dower, or a covenant running with land; and that this right is paramount to all others is expressly ruled in the case of Western Railroad Co. v. Johnston, 9 P. F. Smith 290. In this case it was held, that the sale of a railroad under a mortgage, before the damages to a land-owner are paid, or secured to be paid, will not divest such owner's right to recover compensation from the purchaser.

It would, indeed, be utterly unreasonable and unjust, as well as unconstitutional, that any one should be thus deprived of his property without compensation. What is the Citizens' Water and Gas Company but the successor of the Lycoming Gas and Water Company? And if Moyer was to pursue the proceedings already commenced, which he had an undoubted right to do, what other course could he adopt than to substitute the latter company for the former? When the Lycoming Company was dead and gone, who claimed to hold Moyer's property, and to

[Lycoming Gas and Water Co. *v.* Moyer.]

whom was he to look for payment, if not to the Citizens' Company? Certainly if Moyer had obtained judgment against the former, the latter could have been charged by a scire facias, as in the case above cited, but as the case was still pending, and as the Lycoming Company had passed out of existence, nothing else could be done than to substitute its successor.

The remaining exceptions require but little discussion.

The only one of them that has been seriously urged upon our attention, is that involving the offer to show, by the records in the case, the recovery by Moyer of damages against the Philadelphia and Erie Railroad Company, for injury done to his mill and water-power in the construction of its road. We think this offer was properly rejected. The railroad company was liable for whatever damage it caused to the plaintiff's property, and for that alone. The Lycoming Gas and Water Company had, before this, tapped Mosquito creek with its sixteen-inch pipe, and had to this extent, injured the power of the plaintiff's mill, but for this the railroad company could not be held, and for this it certainly did not pay. It could be held only for the deterioration which it caused to a property already damaged by the act of the defendant.

Suppose the railroad company had wholly destroyed the plaintiff's mill; what would have been the damages to which he would have been entitled? The whole value thereof, with its original water-power? By no means: but its value with the power as diminished by the act of the Gas and Water Company. In other words, the inquiry must be limited to the value of the property after the time of the alleged damage as contrasted with its value immediately before that time.

It does, therefore, seem to us out of all character to insist that the defendant is to be excused for its spoliation of the plaintiff's property, because the railroad company was obliged to pay him for an injury to that which remained after the defendant's abstraction of a material part of its value. Again, as we understand the matter, the railroad company appropriated none of the water; it but caused an obstruction; hence, the claims for damages in the two cases are entirely dissimilar. In the one case they result from a taking of the property of the plaintiff, and in the other, from an obstruction preventing its proper and convenient use.

There is, therefore, no likeness between this case and that of Converse *v.* Colton, 13 Wr. 346. But if we put the supposition that the railroad had taken all the water that had been left to Moyer by the defendant, it would not alter the case, for, nevertheless, the railroad company must have been held only for what it got, and not for what was previously taken by some

other person, and Converse v. Colton is an authority for the principle thus stated.

It follows, that the action of the court below in refusing the proposed evidence, must be sustained, for, however viewed, it could in no particular affect the matter in controversy.

The judgment is affirmed.