# Setzler *versus* The Pennsylvania Schuylkill Valley Railroad Company.

1. The legal measure of damages for constructing a railroad through the land of another, by a railroad company, is the difference between what the property would have sold for, before the construction of the road, and what it would have sold for after the road was constructed.

2. The adjustment of this difference involves, in all cases, a fair and just comparison of the advantages and the disadvantages resulting from the opening and the operation of the road and the construction of its works; but the advantages to be considered are such only as are special and the disadvantages such as are actual. The question in each case is, whether or not the special facilities afforded by the improvements have advanced the market value of the property beyond the mere general appreciation of property in the neighborhood. So also on the other hand, the disadvantages must be actual, not speculative; they must be such as substantially affect the present market value of the land. Mere speculative damages cannot be allowed.

3. In assessing damages to the land owner in such case, the risk of fire, necessarily following the proper and lawful use of locomotives, must be taken into consideration; but this only as it affects the market value of the land.

4. All such matters as. owing to the particular location of the road, may affect the convenient use and future enjoyment of the property, are proper for consideration; but they are to be considered in comparison with the advantages only as they affect the market value of the land.

February 9th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Chester county:* Of January Term, 1885, No. 376.

This case was commenced by the appointment of a jury of viewers, on the petition of Webster K. Setzler, to assess damages suffered by him by reason of the location by the Pennsylvania Schuylkill Valley Railroad Company of a right of way over his farm.

The viewers reported awarding to Setzler the sum of $3,800. From this ·award he appealed, and an issue was framed to determine the amount of damages to which he was entitled.

On the trial before FUTHEY, P. J., the following facts appeared: Plaintiff owned a farm containing about seventy-six acres, bordering on the Schuylkill river and canal, in East Vincent township, Chester county. The Pennsylvania Schuylkill Valley Railroad Company located its road through the premises of the plaintiff, occupying 2.18 acres of his land; passing through the kitchen of his dwelling house, taking the

greater part of the hog house, a part of the barnyard, and running within ten feet of the barn. It also destroyed the garden and the fruit trees, etc., that were growing therein, and cut off a wedge-shaped strip of land containing two acres and one hundred and thirty-nine perches between the railroad and canal. This piece of land is bisected by a considerable gully and stream of water, and requires bridging in order to get the crops from the best portion of it, to and across the railroad at a farm crossing, which the company has established. It required 269 panels of new fence to be built by the plaintiff. A valuable spring of water near the southern limit of the property, which was much used, is rendered useless.

A jury was struck and they viewed the premises several days before the trial. This jury in court, rendered a verdict of $3,143.71, estimating, as they say, that it would be necessary to remove the dwelling house, barn and hog house. The plaintiff's witnesses, who are practical farmers, and well acquainted with the premises for many years, estimate his damages at from $6,500 to $7,500.

The plaintiff presented three points for charge to the court, which appear in the general charge with the answers thereto.

In the general charge the court instructed the jury as follows:

The plaintiff in this case, Webster K. Setzler, is the owner of a farm in Chester county containing seventy-six acres, and the railroad of the defendants, the Pennsylvania Schuylkill Valley Railroad Company, now in process of construction, passes through his property.

The issue you are trying was framed for the purpose of determining the amount of damages the plaintiff has sustained by the taking of a portion of his land for the purposes of the railroad, and the injury thereby occasioned to his dwelling house and other buildings.

You have examined the property and have seen the manner in which the railroad is constructed upon the land, its proximity to the buildings, and other matters to which your attention was directed at the time of your view.

The rule laid down by the Supreme Court for the determination of the question involved in this case, is that it is the duty of the jury to ascertain the value of the property before the railroad was projected through it, then the depreciation it has suffered in the market by reason of the construction of the railroad, and the difference between the two amounts constitutes the amount of damages to be awarded to the plaintiff.

In this case you will therefore ascertain what amount the

plaintiff could have obtained for his property in a fair market, either at a private or public sale, before the construction of the railroad by the defendants, and what he can now obtain for it, the difference being the amount of the injury he has sustained.

The testimony of a large number of witnesses has been given relating to the value of the property, both before and after the construction of the railroad. It is your duty to ascertain these values from all the facts in the case, and not alone from the testimony of the witnesses, which is simply one species of evidence for your consideration.

Your attention has been called to the various disadvantages the plaintiff will suffer when the road is in active running operation, and among these are the shape in which his land has been left, by being cut off from the portion taken by the railroad, the necessity created for the erection of a bridge, the building and maintenance of fences, the addition of a tin roof to the spring house to guard against fire by sparks from passing locomotives, and the injury caused to a spring of water.

The witnesses have testified that 269 additional panels of fencing will be required, at a considerable cost to the plaintiff, and that the value of the garden and a portion of the orchard has been impaired to some extent. These are all matters to be considered by you in determining the question of damages.

The principal items of damage the plaintiff claims have relation to the close proximity of the railroad to his dwelling, barn and hog house. It appears that it runs within a short distance of the barn, the outer line of the track being about ten feet from the corner of the straw house, which projects outward from the barn, passing through the kitchen, taking away a portion of the yard and approaching within one foot of the corner of the main portion of his dwelling.

In this connection you will determine whether the railroad runs so close to the buildings of the plaintiff as to render them practically useless for the purposes of his property, and whether they should be permitted to remain in their present position.

If you are of the opinion that a prudent man can safely occupy the buildings, and that there is no occasion to remove them, then the cost of their removal will not be considered by you, although the inconvenience the plaintiff may suffer by reason of the proximity of the railroad is a proper matter for consideration in ascertaining the extent of the depreciation of the property in the market.

The law is clear, however, if you determine that ordinary

[Setzler v. Pennsylvania Schuylkill Valley R. R. Co.]

prudence will render it safe for the buildings to remain in their present position, [that no damages can be given by way of anticipation of any injury the plaintiff may hereafter suffer by fire, either carelessly, occasioned through the negligence of the defendants, or inadvertently, in the proper management of their trains, and it is therefore not an element which you are to consider.]    (Third assignment of error.)

[The only question you are to determine, if you decide that a prudent man can safely occupy the buildings as they are now located, is the damage the plaintiff has sustained by the construction of the railroad, the taking of his land and the expense he will incur in restoring his property to its former condition.]    (Fourth assignment of error.)

If you reach the conclusion that the proximity of the railroad to the buildings places them in such a position as to render them unsafe for occupation by a prudent man, it is an element that enters into the question of the depreciation of the property in the market, and you will then take into consideration the expense the plaintiff will incur by removing them to another point on his property.

In determining this question, if you conclude that it will be safe for the buildings to remain as they now are, you will consider the testimony that has been given in relation to their possible alteration, and the expense of making the necessary alterations will form an item in the plaintiff's claim for damages.

If you find that it will be impracticable to make these alterations, and that the proximity of the railroad renders it unsafe for any prudent man to occupy the dwelling-house, or to use the other buildings as they are now located, you will consider the cost of their removal to other points, and allow him in your verdict such an amount as will represent the depreciation in the value of his property in that respect.

These are the principal matters involved in the determination of the case to which it is necessary I should particularly call your attention.   You have heard the testimony given by the various witnesses as to the manner in which the railroad runs through the property, the estimates they have placed upon the quantity and value of the land taken, the cost of additional fencing, and the other items forming the plaintiff's claim for damages.

It is your duty to consider all the testimony relating to these items, in order to arrive at a proper conclusion as to the depreciation in the market value of the property, and, upon whatever amount you may determine is the damage he has sustained, you will compute interest from the date of the taking of his land, to wit, May 1st, 1883.

In conclusion, I desire to remind you that both the parties to this issue are equal before the law. You are a jury selected by both of them to determine the matter at issue, and you should not be influenced in rendering your verdict by the fact that the plaintiff is an individual and the defendants are a corporation, for both have their rights, and whatever those rights may be, it is you duty to accord them.

I have been requested by the counsel for the plaintiff to instruct you upon the following points, viz. :

1. " A land owner is obliged to run the risk of fire, necessarily following the proper and lawful use of locomotives, and in the event of such fire, no recovery can be had for losses resulting therefrom."

I have referred to the principle of law stated in this point, and have said that if you conclude it is safe for the buildings to remain in their present position, any possible loss that may hereafter accrue to the plaintiff by fire, or other cause, in the management of the railroad, cannot be taken into consideration in determining the question of damages. If, however, you determine that it is necessary to remove the buildings to some other point, and that the proximity of the railroad renders them unsafe for occupancy by a prudent man, the cost of their removal is a proper element to be considered in estimating the amount of damages the plaintiff has sustained. (Second and fifth assignments of error.)

2. " If the jury believe that the railroad is located so near the buildings of the plaintiff as to render them practically useless, damages may and ought to be given for their loss."

I have previously answered this point by saying that if the railroad has been constructed so close to the buildings that a prudent man would not consider it safe to occupy them, the cost of their removal to some other point on the property is a proper element of loss to be taken into consideration in determining the depreciation in the market value of the property.

3. " If the jury believe that if from the proximity of the road to the buildings, the danger of fire is such that no man of common prudence would use them, but would be compelled to provide himself with buildings elsewhere, the jury should consider this in estimating the damages."

I have already said all that I deem necessary in regard to this point.

In framing your verdict, as one of the questions to be determined is whether it is necessary to remove the buildings on the property to some other point, you will in the first place render a verdict for whatever amount of damages you may conclude the plaintiff has sustained, and will then say whether or not, in your opinion, the present position of the buildings

[Setzler *v.* Pennsylvania Schuylkill Valley R. R. Co.]

is unsafe for occupancy by a prudent man. If you reach the conclusion that the buildings are in an unsafe position you will state that fact in your verdict, in addition to finding the amount of damages you may determine the plaintiff has sustained.

The counsel for the plaintiff excepted to the charge of the court, viz.:

1. "To that part of the charge instructing the jury that the proper measure of damages is the difference between the market value of the property before the road was constructed and since the construction."

2. "To that part of the charge where the court said that if the jury determine that a prudent man can use the buildings where they are, they cannot estimate any damage from fire, either through negligence or otherwise—that it cannot be taken into consideration by the jury." (First assignment of error.)

The counsel of the plaintiff in his cross-examination of Davis Kimes, a witness who had been called by and who testified for the defendant, asked:

Question by plaintiff's counsel: "How many times have you testified for this railroad company? Objected to by counsel for defendant. Objection sustained; exception for plaintiff. (Sixth assignment of error.)

Verdict for the plaintiff in the sum of $3,143.71 damages, and six cents costs, and "we have estimated in this verdict for the removal of the dwelling-house, barn and hog-house from the present site to another."

Judgment was entered thereon, whereupon the plaintiff took this writ assigning for error the answer to his points, the portions of the general charge included within brackets, and the sustaining of the objection of defendant to his question to witness, as above indicated.

*Wm. M. Hays,* for plaintiff in error.—This court has repeatedly announced the law to be, that after a railroad is constructed and in operation, the land owner may not recover for the burning of his fences, or fields, unless there has been negligence on the part of the company.

Mr. Justice GORDON, in delivering an opinion of this court, says: "The rule of law is, and must be, that if reasonable precautions are taken in providing engines with those appliances which are deemed best for the prevention of damage, the company, or persons using them, cannot be made liable, though they fire every rod of the country through which they run": P. & R. R. R. Co. *v.* Schultz, 12 Norris, 344.

After a railroad has once secured and paid for the right of

way, the land owner "must run all the risks of a proper and careful use of the road, for this is the company's right."

Whilst this is the familiar language of the law, yet equally potent is the constitutional provision that "municipal and other corporations and individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works," etc. (Sec. 8, Art. 16.)

After the damages for the taking are assessed and paid, the property and whomsoever may thereafter be its owner, must suffer those burdens which necessarily result from " a proper and careful use of the road."

When the damages are being assessed, however, what is more reasonable than that the jury may consider to what extent the market value of the land is affected by " the ordinary danger from accidental fires to fences, fields," etc?

To take away from the jury the consideration of this question, is depriving the plaintiff of that constitutional safeguard which has been guaranteed to him; and it is most clearly in violation of the law, as reiterated by this court so late as November 9th, 1885. Had this decision, R. R. Co. *v.* McCloskey, 16 W. N. C., 561, been rendered prior to the trial of this case, the court below would have most cheerfully acquiesced; and the plaintiff would certainly not have received a verdict for nearly $700 less than was awarded him by the original viewers.

*Thomas F. Butler* and *R. E. Monaghan*, for defendant in error.—Away back in the days of Judge GIBSON, before railroads were beginning to supersede turnpikes and canals, that great Judge declared the rule, as to the measure of damages caused by the construction of public works to be, that " the juries are to consider the matter just as if they were called on to value the injury at the moment when compensation could first be demanded; they are to value the injury to the property, without reference to the person of the owner, or the actual state of his business. In doing that, the only safe rule is to inquire what would the property, unaffected by the obstruction, have sold for at the time the injury was committed? What would it have sold for, as affected by the injury? The difference is the true measure of compensation ": Schuylkill Navigation Co. *v.* Thoburn, 7 S. & R., 411.

This wise and just rule has from that time to the present, been recognized and followed in the adjustment of damages caused to owners of property, resulting from the construction of railroads.

This court, in many cases, has repeatedly laid down the

[Setzler v. Pennsylvania Schuylkill Valley R. R. Co.]

same rule in more concise, and perhaps clearer language, when it declared that " the measure of damages for building a railroad through a man's land to be the difference betwixt the value of the land before the road was built and its value after the road is finished: Hornstein v. The Atlantic & Great Western Railroad Co., 1 P. F. S., 87; Penn'a R. R. Co. v. Heister, 8 Barr, 445; Sunbury & Erie R. R. Co. v. Hummell, 3 Casey, 104; Searle v. The Lack. & Bloomsburg Railroad Co., 9 Casey, 57; Patten v. Northern Central R. R. Co., Id. 426; East Penn. R. R. Co. v. Hottenstine, 11 Wr., 28; Harvey v. The Lack. & Bloomsburg R. R. Co., 11 W., 428; Pitts. & Lake Erie R. R. Co. v. Robinson, 14 Norris, 426.

The jury assessed the cost of the removal of the buildings, and there cannot be any complaint to the charge of the court, or the answer to plaintiff's points.

After the case, Pittsburgh, Bradford and Buffalo Railway Co. v. Robert McCloskey, vol. 16, W. N. C., page 56, was reported, the plaintiff made a motion for a re-argument in the court below. The court heard the re-argument, considered the case above cited, and a second time refused a new trial. It was in the re-argument that the plaintiff attempted to extend the meaning of the part of the charge complained of as well as the answer to his first point.

Railroad v. McCloskey (above cited), does not change the law from the way it is stated in Railroad v. Hummell, 3 Casey, 99, and Railroad v. Stauffer, 10 P. S. G., 374. The jury cannot be allowed in their verdict to indemnify the plaintiff against accidental fires.

Mr. Justice CLARK expressly says this in disposing of the McCloskey case : He says, however, " that the ordinary danger from accidental fires to the fences, fields, or farm buildings, not resulting from negligence," is only to be considered in estimating to what extent the road may affect the market value of the farm. The court permitted the witnesses to give evidence as to such danger, and the plaintiff was satisfied with it. In assessing the damages caused by the construction of a railroad through the lands of an individual, the risk of damages by fire to the property by the negligent management of its locomotives is not to be taken into consideration : Sunbury & Erie R. R. Co. v. Hummell, 27 Pa. St., 99; Lehigh Valley R. R. Co. v. Lazarus, 28 Pa. St., 203; Patten v. Northern Central R. R. Co., 33 Pa. St., 426.

Mr. Justice STERRETT delivered the opinion of the court February 23d, 1884.

The charge of the learned Judge, in relation to the proper measure of damages in cases like the present, is in the main

correct. In accordance with the long recognized rule, he instructed the jury " to ascertain the value of the property before the railroad was projected through it, then the depreciation it has suffered in the market by reason of the construction of the railroad, and the difference between the two amounts constitutes the amount of damages to be awarded to the plaintiff;" and, they should "therefore ascertain what amount the plaintiff could have obtained for his property in a fair market, either at public or private sale, before the construction of the railroad by the defendant, and what he can now obtain for it, the difference being the amount of the injury he has sustained." He also instructed the jury to allow interest on the damages so found by them, from the time plaintiff's property was taken. To these instructions there can be no just ground of complaint; but it is contended by plaintiff that in the application of the general rule above stated, at least one material element of depreciation was afterwards excluded from the consideration of the jury. It was conceded that the location and construction of the road through plaintiff's farm had lessened its market value. In addition to the land actually taken for road bed—nearly two and one fifth acres—the elements of depreciation, in regard to which testimony was given, were: 1st, the ordinary risk of fire, involving injury to fences, crops, &c., necessarily incident to the proper and legitimate use of locomotives in operating the road; 2d, the close proximity of the road to the farm buildings, rendering them unsafe for occupancy, and thus necessitating their removal and reconstruction, as the jury has specially found; 3d, the necessity for making and maintaining additional fence; 4th, the inconvenience and expense of access to a portion of the farm cut off by the railroad, and also some minor matters, in regard to which there was little or no controversy. The principal contention, it is true, was in regard to the necessity of removing the buildings and the cost thereof, but there was no abandonment of either of the other elements of depreciation, in support of which testimony was introduced, and especially that in relation to the ordinary risk of fire not resulting from negligence. That this is a matter proper to be considered by the jury in determining the extent to which the market value of the property has been depreciated, cannot be doubted.

The principles governing the assessment of damages to the owner of lands through which a railroad has been located, are clearly and concisely stated by our brother CLARK, in The Pittsburgh, Bradford and Buffalo Railway Company *v.* McCloskey, 16 W. N. C., 561. After quoting the general rule announced by Chief Justice GIBSON, in Schuylkill Navigation Company *v.* Thoburn, 7 S. & R., 411, viz: that the true meas-

ure of compensation is the difference between what the property, unaffected by the obstruction, would have sold for at the time the injury was committed, and what it would have sold for as affected by the injury, he proceeds to say : "The adjustment of this difference involves, in all cases, a fair and just comparison of the advantages and disadvantages resulting from the opening and operation of the road, and the construction of its works ; but the advantages to be considered are such only as are special, and the disadvantages such as are actual. The general appreciation of property in the neighborhood, consequent to the projected construction of the road, cannot enter into the calculation ; to this the land owner whose lands have been taken is as fairly entitled as is his neighbor whose possession and enjoyment have not been disturbed. The general increase of value, resulting from the growth of public improvements, railroads, canals and highways, accrues to the public benefit, and in the computation of damages the landowner cannot be charged therewith. The question in each case is whether or not the special facilities afforded by the improvement have advanced the market value of the property beyond the mere general appreciation of property in the neighborhood. So, also, on the other hand, the disadvantages must be actual, not speculative : they must be such as substantially affect the present market value of the land. . . . . . Merely speculative damages cannot be allowed. The inconvenience arising from a division of the property, or from increased difficulty of access, the burden of increased fencing, the ordinary danger from accidental fires to fences, fields or farm buildings, not resulting from negligence, and generally all such matters as, owing to the particular location of the road, may affect the convenient use and future enjoyment of the property, are proper matters for consideration ; but, they are to be considered in comparison with the advantages only as they affect the market value of the land."

It will be observed that damages which may possibly result from negligent or unskillful operation of a railroad are thus wholly excluded from consideration in such proceedings as this. Such damages may never be sustained ; and, if they do occur, the party aggrieved may have an independent remedy therefor. It is only ordinary dangers or risks, not resulting from negligence, that can be taken into consideration in assessing damages to the land-owner ; and, even those dangers or risks are not to be regarded, except in so far as they affect the market value of the land. It follows, therefore, that the landowner is obliged to assume the ordinary risk of fire, necessarily incident to the proper and lawful use of locomotives ; and, in the event of loss resulting therefrom, no recovery can be had

2 AMERMAN—5

therefor. Hence plaintiff's first point to that effect should have been affirmed. The risk therein mentioned is clearly an element of depreciation, and if its effect on the market value of the property is not taken into consideration in estimating the damages he has sustained, it can never be considered. The answer of the learned Judge is not responsive to the point; and, in any aspect, it is misleading and erroneous in that it conveys the idea that such risks cannot be taken into consideration by the jury in determining the question of damages. The second and fifth specifications of error are sustained; and, in so far as portions of the charge embraced in the first, third and fourth specifications are calculated to convey the same idea, they are also sustained. There is no merit in the sixth specification.

Judgment reversed and a *venire facias de novo* awarded.