## Simon v. Philadelphia

*Edward Unterberger*, for plaintiff.

*Richard D. Solo* and *Augustus R. Sigismondi*, for defendant.

KELLEY, J., December 1, 1960.—This matter arises on plaintiff's motion for a new trial. Its background begins on December 27, 1945, when, by ordinance, defendant city condemned, through plaintiff's land, a right of way for the Byberry Creek collecting sewer, a part of the Northeast Sewerage Treatment Works. On August 25, 1954, this right of way was appropriated by notices to proceed. A board of view was appointed and on July 11, 1957, damages were assessed in favor of plaintiff in the sum of $7,850. On July 23, 1957, and on August 7, 1957, the city and plaintiff, respectively, appealed from this award.

On May 2, 1960, the matter came to trial before this court and a jury. The court and the jury viewed the land. On May 4, 1960, the jury returned a verdict in favor of the city.

The land owned by plaintiff comprised 31.7868 acres. The taking involved 3.3688 acres. It manifested itself by way of an easement upon which an interceptor sewer was built. This sewer right of way was approximately 140 feet wide and extended along the bed of Byberry Creek through plaintiff's property. The creek and the sewer divided plaintiff's property into two areas.

Plaintiff's lone witness estimated the value of the land before the taking and thereafter, and calculated a loss in value of $10,300. The city's witness, on the other hand, testified to an increased value by reason of the sewer. He calculated a benefit to plaintiff in an amount of $7,200. The jury found for the city, and this motion for new trial followed.

The motion was predicated upon plaintiff's contention that there was no evidence that plaintiff had received any *special* benefit from the installation of the sewer, which benefit could be properly deducted, in favor of the city, from any general loss to plaintiff caused by the taking.

Our Constitution requires that private property shall not be taken or applied to public use without just compensation being made (article 1, sec. 10), and that municipal corporations taking private property for public use "shall make just compensation for property taken . . . which compensation shall be paid or secured before such taking . . .": Article 16, sec. 8. However, it was early set down that "just compensation" need not necessarily require payment in money, but would include payment in benefits so long as the benefits were *peculiar* or *special* to the particular land involved, and not *general* to the entire neighboring area: Root's Case, 77 Pa. 276 (1875).

Accordingly, while the measure of damages occasioned by the taking is the difference in market value of the whole tract, of which the land taken is a part,

before the taking, and the market value of the land remaining after the taking, as affected by the taking (Johnson's Petition, 344 Pa. 5, 7), nevertheless, there may be set off as against any diminished value such *special* benefits as accrue to the landowner by reason of the taking.

In this light, the trial judge, after explaining to the jury the fact that the city had taken the land in question, instructed them:

"From any loss that the plaintiff has sustained there should be deducted, when you are figuring the verdict, any special benefit that the owner received, not a subsequent benefit. Everybody in the neighborhood gets a benefit from a sewer. Sooner or later everybody through the lateral or branch lines you have heard described from the witness stand will connect into that sewer, and you should deduct from her award, that is the plaintiff in this case, only such special benefit as that land may get from the fact that is is very close to the sewer and that she could connect up with it without traversing anybody else's land or without building a long pipe line—she could build a relatively short one. So whatever benefit that might be, if you think there is a benefit there, should be deducted from the award, because that is a benefit as against the loss."

There is no question but that the laying of the interceptor sewer benefited the land in question: Andrews Land Co. v. City of Erie, 21 Erie 149 (1939). The question is: Did the trial court's instruction as to *special* benefits find basis in the record? It is clear that it did.

James F. Dillon, an Assistant Engineer, Projects Control Division, Water Department of the City of Philadelphia, testified as to how a sewer system works. He described how the various fixtures in a house are connected to a vertical drain pipe which, in turn, is

connected to a larger pipe called a sewer lateral. The sewer lateral extends to a branch sewer which is in the street and which then runs to the collector or interceptor sewer. From the collector, the sewage is conveyed to the sewage treatment plant and then to the river. He pointed out that until an interceptor sewer is installed a builder cannot bring trunk lines into the sewer system.

Oscar Stern, whose qualifications were admitted by plaintiff, also testified on behalf of the city. He stated that the highest and best use of plaintiff's land was for building developments, which use was agreed upon by the parties; that the area of the taking was of a lesser value than the balance of the tract because a builder does not want creek land save for ornamental purposes, and that generally the entire tract was benefited by the sewer rather than harmed.

"Yes, the very thing that gave it value afterwards was the fact that the developer could utilize those sewers, when he couldn't before."

With regard to the question of whether the benefit that evidently accrued was special to plaintiff or was general to the entire area, Mr. Stern pointed out that the sewer was right on the land where it could be used, that plaintiff's was the only property that could tie in to it at any time the owner wished. Builders on other tracts, even those immediately adjacent to the tract owned by plaintiff, would have to tie in through the medium of branch sewers legally opened in city streets. They would have to await permission and then go through entire streets and they would have to await the regular procedure of the establishment of street grades, full-width development, the completion of other utilities and the legal opening of the streets. Since such procedure awaits the time when those particular areas are ripe for development, it could extend for some years.

He noted that it would be a much simpler proposition to develop plaintiff's land because of the proximity of the interceptor sewer. A builder developing a street pattern there could tie his trunk lines directly in to the interceptor while those even once removed would have the greater problem of increased construction and time.

It appears, in line with the judicial precedent, that the proffered evidence was sufficient to warrant an instruction that the jury could find a benefit to plaintiff's land, derived from the sewer, over and above that in common or alike with other land in the neighborhood or vicinity.

The case closest in point is Achenbach v. Slate Belt Telephone & Telegraph Co., 73 Pa. Superior Ct. 568 (1920). There, defendant had constructed a telephone line along a highway which ran through plaintiff's farm. Viewers were appointed to assess the damages and their award appealed from. The trial resulted in a verdict in favor of plaintiff and defendant telephone company appealed. The question involved was whether or not the construction of the line was a special or general benefit; whether the advantages offered by it could properly be set off against the taking.

The Superior Court pointed out that in determining whether benefits are common to the community in general or special to any peculiar class of properties, the question in each case is: whether or not the special facilities afforded by the improvement have advanced the market value of the property beyond the mere general appreciation of the property in the neighborhood: Setzler v. The Pennsylvania Schuylkill Valley Railroad Company, 112 Pa. 56; Dawson v. City of Pittsburgh, 159 Pa. 317. It was noted that the owner of land through which a telephone line passes is, with regard to the use of the line, in a class distinct from the owners of land which does not abut upon a line,

and that the abutting properties form a special or peculiar class, distinct from the other properties in the neighborhood.

Anticipating the instant situation, the Superior Court further stated:

"The construction of a sewer may be a special benefit to every property which directly abuts upon it, although it may be an incidental benefit to the entire community, but for reasons entirely different. So essential is the difference in the benefits to property directly abutting upon these two classes of improvements [streets and sewers] and the benefits to properties not directly abutting thereon, that special assessments for improvements of this character cannot be sustained against properties of the latter class": Achenbach v. Slate Belt Telephone & Telegraph Co., supra, at 571-72.

See also Gaughan v. Scranton City, 266 Pa. 586, 591 (1920), where the taking was for a street and wherein it was stated:

"However, the difference between the two [nonabutting and abutting property] because of the direct contact of the latter with the improvement is marked, and must be considered by the jury, and the city given credit for the special advantages thereby accruing, although like advantages also accrue to other properties upon the line of improvement."

Directly in line with these authorities was the testimony which showed that plaintiff's land could be developed quickly and immediately because it directly abutted the intercepting sewer and its trunk and branch lines would neither have to traverse anyone else's land nor carry with them the increased cost of construction and time. Therefore, notwithstanding any general indefinite appreciation of the value of other property in the neighborhood, the jury could find special benefits to plaintiff's abutting property, which

special benefits it evidently set off against any actual damage caused by the taking.

Accordingly, it is ordered that plaintiff's motion for a new trial be dismissed.