# PENNSYLVANIA R. CO. v. EDW. D. MARCHANT.

.ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued March 19, 1888—Decided April 9, 1888.

1. The mischief which the constitutional convention had before it in the adoption of § 8, article XVI., of the constitution of 1874, was the want of a remedy under previous constitutions to obtain compensation when property was injured or destroyed in the construction or enlargement of corporate works, though no portion of it was actually taken by the offending corporation; instances: O'Connor v. Pittsburgh, 18 Pa. 187: Monongahela Nav. Co. v. Coons, 6 W. & S. 101.

2. The remedy provided by said constitutional provision, to secure just compensation by corporations for property "injured or destroyed," has relation to injuries which, though popularly termed consequential, are yet to be understood as confined to such injuries to one's property as are

| 119 | 541 |
|-----|-----|
| 124 | 558 |
| 124 | 559 |
| 119 | 541 |
| 132 | 307 |
| 119 | 541 |
| 142 | 39 |
| 119 | 541 |
| 151 | 47 |
| 151 | 337 |
| 153 | 374 |
| 119 | 541 |
| 159 | 444 |
| 119 | 541 |
| 182 | 477 |

| 119 | 541 |
|-----|-----|
| 20 SC | 1203 |

| 119 | 541 |
|-----|-----|
| d205 | 20 |

| 119 | 541 |
|-----|-----|
| 214 | 3631 |
| e214 | 3632 |

| 119 | 541 |
|-----|-----|
| 215 | 2 99 |
| 31 SC | 3230 |

| 119 | 541 |
|-----|-----|
| 223 | 3115 |

| 119 | 541 |
|-----|-----|
| 226 | 2 34 |

actual, positive and visible, the natural and necessary results of the original construction or enlargement of its works by a corporation, and of such certain character that compensation therefor may be ascertained at the time the works are being constructed or enlarged, and paid or secured, as provided in the constitution, in advance; instances: Reading v. Althouse, 93 Pa. 400; New Brighton v. U. P. Church, 96 Pa. 331; Phil. & R. R. Co. v. Patent, 17 W. N. 198; Penn. R. Co. v. Duncan, 111 Pa. 352; Chester Co. v. Brower, 117 Pa. 647.

3. The necessities of a railroad company and the public character of its business compel it to seek the heart of a city; and, where, upon property it has itself acquired, it has constructed its roadway without taking any portion of the property of the plaintiff, it is not liable for indirect injuries to the plaintiff which are the result merely of the subsequent operation of its railroad in a lawful manner, without negligence, unskilfulness or malice: Penn. R. Co. v. Lippincott, 116 Pa. 472, approved.

4. The word "injury" (or injured), as used in § 8, article XVI., of the constitution, we understand to mean such a legal wrong as would be the subject of an action for damages at common law; for such injuries both corporations and individuals now stand upon the same plane of responsibility: per Mr. Justice PAXSON.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 142 July Term 1887, Sup. Ct.; court below, No. 133 September Term 1884, C. P. No. 3.

On October 25, 1884, an action in case was brought by Edward D. Marchant against the Pennsylvania Railroad Company to recover damages for consequential injuries to his property, No. 1711 Filbert street, arising from the construction and operation of the Filbert street extension of the defendant company's roadway.

The plaintiff's declaration averred the ownership and possession by the plaintiff, on June 1, 1881, and subsequently, of a four-story brick messuage or tenement, partly of brown stone front, upon a lot of ground on the north side of Filbert street at No. 1711; that Filbert street was a public street or highway of Philadelphia, duly laid out, graded, curbed and paved, of twenty-four feet in width from curb to curb, and that the defendant was and still is a corporation, etc., invested with the privilege of taking private property for public use.

That the defendant at the date aforesaid, in the construction and enlargement of its works, highways and improvements,

did erect, build and construct along and upon the south side of said street and in front of the plaintiff's property abutting thereon on the north side, an elevated railroad placed on piers or abutments set on or about the line of the south side of said street, at intervals longitudinally of fifty feet more or less and at an elevation of twenty feet above the established grade of said street, which said elevated railroad, further westward, built upon piers or pillars, extended across said street to the north curb line thereof, making a part of a continuous line of railway, which was and had been from said date operated and used by the defendant company for the purposes of the transportation of goods and passengers in cars driven and drawn by steam locomotives.

Further, " that the erection, building and construction by the said defendant of the elevated railroad aforesaid, and the erection and construction of the abutments, piers and pillars as aforesaid for the support of the superstructure aforesaid, and the operation and use of the said elevated railroad for the transportation of freight and passengers in railway cars driven by steam locomotives, and the noise, burning cinders, smoke, dirt, dust and jarring, incident to the operation and use of an elevated railroad constructed as aforesaid for the purposes aforesaid, injured the said plaintiff in the possession, use and enjoyment of his premises and property aforesaid, and rendered the same incommodious, unfit and of little or no use and value to the said plaintiff; darkened the premises of said plaintiff, and hindered the light and air from coming and entering into and through the windows of said dwelling, so that the same was rendered uncomfortable, unwholesome and unfit for a habitation, and injured and incommoded the plaintiff in the enjoyment thereof and in the conduct of his business as a painter, and depreciated the value of said premises, and deprived him of the free use along and upon Filbert street as a highway as aforesaid, and greatly depreciated the value of said premises while he was so possessed of the same, to wit, from the day and year first aforesaid till, to wit, October 7, 1882, all of which resulted in a sale of said premises far below their value before the erection and operation of said elevated railroad and far below what the said premises were at that time worth and would have brought had the said premises not have been

injured as aforesaid by the construction of said railroad and operation of the same."

An amendment of the narr. alleged, as additional injuries, the cracking of the walls of the plaintiff's house from the jarring caused by passing trains; the disturbance of the rest of the plaintiff and his family by night and their peace by day; the breaking up of the plaintiff's business as an artist; the destruction of the use of the premises as a resting and boarding place for sick persons carried on therein, by reason whereof, etc., etc.

At the trial on November 5, 1886, it was admitted in the plaintiff's case in chief, (1) that Filbert street, between Seventeenth and Eighteenth, opposite the plaintiff's property, was fifty-one feet wide from the north side of the works of the railroad company, the entire width intervening between plaintiff's house and said works; (2) that the construction of the Filbert street extension was begun in October, 1879, and completed and the road put in operation thereon on December 5, 1881; (3) and, inter alia, that the train movements in twenty-four hours at Seventeenth and Filbert streets were about 1440 in number. After evidence of title, testimony was introduced on the part of the plaintiff that gradually, after the railroad was in operation, the walls of the plaintiff's house began to crack in many places; the house shook continuously as trains were moving; mantel-pieces were affected and one of them shaken from the wall; that there was a turn-table opposite, and the rest and comfort of the plaintiff and of his family were disturbed by the noise, soot and smoke; that the property was sold from the plaintiff in October, 1882, and he left it in 1884, when it was afterwards used as a seed store. Evidence was also given as to the depreciation in value of the property arising from the construction and operation of the railroad.

On the part of the defendant company, after evidence showing title authorizing the Filbert street extension and erection of the elevated roadway opposite the plaintiff's premises, testimony was introduced upon the subject of the depreciation in value of the property to meet that introduced by the plaintiff, when the case was closed upon the evidence and the defendant submitted the following points for instructions:

1. The defendant, under its charter and supplements in evidence, had full lawful authority to erect and operate the Fil-

bert street extension or branch described in the declaration, without incurring any liability by reason thereof for consequential damages to the property of the plaintiff; the uncontradicted evidence being that none of the said property was taken by the defendant, but that the entire width of Filbert street intervenes between the railroad of the defendant and the nearest point thereto of the property of the plaintiff.[1]

2. The defendant, as purchaser of the main line of the public works of this state, under the act of assembly and deed in evidence, had full lawful authority to erect and operate the said Filbert street extension or branch, without incurring any liability to the plaintiff for alleged consequential damages to his property; the uncontradicted evidence being that none of the said property was taken by the defendant, but that the entire width of Filbert street intervenes between the railroad of the defendant and the nearest point thereto of the property of the plaintiff.[2]

3. The contracts contained in the charter of the defendant and the supplements thereto, in evidence, as well as the contract contained in the act of assembly and deed for the main line, already mentioned, authorized the defendant to construct said extension or branch, with liability for property taken only; and no subsequent legislation by this state can impair the obligations of those contracts, or either of them, by increasing the price of the exercise of the franchises granted by imposing an obligation to pay for property alleged to be injured, but not alleged to have been taken.[3]

4. The property of the plaintiff being separated from the railroad of the defendant by the entire width of Filbert street, a public highway of the city of Philadelphia of the width of fifty-one feet, there is no liability on the part of the defendant for alleged consequential damages to said property.[4]

5. The uncontradicted evidence being that the property of the plaintiff is situated on the north side of Filbert street, a public highway of the city of Philadelphia, on the opposite side from the railroad of the defendant, which does not occupy any part of said street opposite the property of the plaintiff, and is erected wholly on its own property, being a distance of fifty-one feet therefrom, and there being no evidence that any of the property of the plaintiff was taken, injured or destroyed

by the construction of the said Filbert street extension or branch, the verdict must be for the defendant.[5]

6. The plaintiff's property being situated in a thickly built portion of the city of Philadelphia, and upon the opposite side of a frequented public highway, the defendant is not responsible for the consequences to the plaintiff's property of the proper and careful operation of its road.[6]

7. Under all the evidence the verdict should be for the defendant.[7]

The foregoing points were all refused by the court, FINLETTER, P. J., who instructed the jury that there was but one question for them to determine, and that was, what had been the depreciation in the value of the property; that the fair rule, as the law said, was to consider the value of the property immediately before and its value immediately after the injury was inflicted, and the difference between those two values would be the amount of damages suffered; that upon whatever amount the damages at the time of the sale of the property in October, 1882, might be estimated, interest should be allowed to the date of the trial, four years and one month.

The jury returned a verdict for the plaintiff for $4,980. On June 9, 1887, judgment was entered upon the verdict, when the defendant company took this writ assigning for error:

1–7. The refusal to affirm the defendant's points.[1 to 7]

*Mr. Wayne Mac Veagh* (with him *Mr. James A. Logan, Mr. George T. Bispham* and *Mr. A. H. Wintersteen*), for the plaintiff in error:

The points submitted in this case and the answers thereto, as well as the rule laid down by the court below as to the measure of damages, puts the case under the decision of this court in Penn. R. Co. v. Lippincott, 116 Pa. 472. The argument of the plaintiff in error in that case is repeated as the argument in this case.

Independent of section 8, article XVI., of the constitution, it could never be claimed that an action would lie in such cases as the present, for there was no taking of property in the sense of the old law. But, even under this constitutional provision, there is no valid claim for compensation in this case.

1. Section 8, article XVI. of the constitution, requires compensation to be made to property owners for such injuries only as would be actionable at common law, if done by a person not invested with the state's right of eminent domain: Edmundson v. Railroad Co.. 111 Pa. 320; Shrunk v. Schuylkill Nav. Co., 14 S. & R. 71; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 R. 23; Watson v. Railroad Co., 37 Pa. 469; Sunbury & Erie R. Co. v. Hummell, 27 Pa. 104; Lehigh Valley R. Co. v. Trone, 28 Pa. 206; Pittsb. & Lake Erie R. Co. v. Jones, 111 Pa. 204.

From the cases cited, it is clear that the word "injured," as used in the constitution, can mean but one thing, namely, a *legal wrong*, or such an interference with another's right as would be the ground of an action at common-law. Such is the meaning of the word as established in the English courts: Denver v. Bayer, 23 Amer. L. R., N. S., 447; Rochette v. Railway Co., 17 Amer. & E. R. C. 194; Caledonia R. Co. v. Ogilvy, 2 McQ. 229; Ricket v. Railway Co., 2 H. of L. 175; Caledonia R. Co. v. Walker's Trustees, L. R. 7 App. C. 259.

2. The injuries to the plaintiff, arising from the construction of the defendant's road on the opposite side of the street, on its own property, are not such injuries as would be actionable at common-law if done by a person or corporation vested with a franchise to operate a steam railroad, and not vested with the state's right of eminent domain. The defendant, therefore, is not liable for such injuries: Penn. Coal Co. v. Sanderson, 113 Pa. 126; West Cumberland I. & S. Co. v. Kenyon, L. R. 11 Ch. D. 787; Panton v. Holland, 17 Johns. 99; Thurston v. Hancock, 12 Mass. 220 (7 Amer. D. 57); Platt v. Johnson, 15 Johns. 213; Clarke v. Foot, 8 Idem 421; Brand v. Railway Co., L. R. 2 Q. B. 247.

In all of the cases in this court at all analogous, since the constitution of 1874, among which are Pusey v. Allegheny, 98 Pa. 522; Penn. R. Co. v. Duncan, 111 Pa. 352; Phila. & R. R. Co. v. Patent, 17 W. N. 198; Pittsb. Junction R. Co. v. McCutcheon, 18 W. N. 527, and Pittsb. Junction R. Co. v. Smith, recently decided, the decisions are all sustainable on the ground that the plaintiff in each of them, who was the abutting property owner, owned to the middle of the highway, and, besides the fact that his land was taken, he suffered very

material damage to his property in that there was an obstruction of light or an interference with free access or something of the kind.

So the English cases where the plaintiff recovered: Reg v. Railway Co., 2 Q. B. 347; Glover v. Railway Co., 16 A. & E., N. S., 912; Reg. v. Railway Co., 14 Q. B. 25; Chamberlain v. Railway Co., 2 B. & S. 605; Beckett v. Railway Co., L. R. 3 C. P. 82; Metropolitan Board of Works v. McCarthy, L. R. 7 Eng. & I. App. 243; Caledonia R. Co. v. Walker's Trustees, L. R. 7 App. C. 259. So the cases of other states in this country: Proprietors of Locks and Canals v. Railroad Co., 10 Cush. 385; Presbrey v. Railroad Co., 103 Mass. 1; Ermes v. Worsted Co., 11 Met. 570; Fuller v. Manufacturing Co., 16 Gray 460; Pub. Stat. Mass. 1882, p. 618; Wood's R. Law, § 212.

If, however, it should be held that the plaintiff's property has been injured within the meaning of the constitution, it remains to consider the position that

3. The constitution provides only for compensation arising from the construction of the railroad. There can be no compensation for injuries to persons or property, unaccompanied with negligence and arising merely from the operation or use of the railroad, as distinguished from its construction: Newcastle & F. R. Co. v. McChesney, 85 Pa. 522. "Without the word ' use,' the injury for which a railroad is liable would simply be such as results from the construction and repair of the road:" 3 Conv. Deb., 600–605.

Under the Land Clauses Consolidation Act, 8 and 9 Vict., Ch. 18, §§ 63 and 68, have been decided: Rickett v. Railway Co., L. R. 2 Eng. & I. App. 198; Hammersmith & City R. Co. v. Brand, L. R. 4 Eng. & I. App. 171; Caledonia R. Co. v. Walker's Trustees, L. R. 7 App. C. 259. See also Penny v. Railway Co., 7 E. & B. 660; Glasgow U. R. Co. v. Hunter, L. R. 2 Scotch Ch. Div. App. 78.

*Mr. M. Hampton Todd* (with him *Mr. George H. Van Zandt*), for the defendant in error:

It is conceded that this case is identical with Penn. R. Co. v. Lippincott, 116 Pa. 472, but we hope to convince this court that the defendant is liable for the injury it has done to the plaintiff's property.

1. Two rules assist in the construction of § 8, article XVI., of the constitution of 1874: (1) "There are three points to be considered in the construction of all remedial statutes: the old law, the mischief and the remedy. . . . . And it is the business of all judges to construe the act so as to suppress the mischief and advance the remedy:" 1 Bl. Com. 87*; Hayden's Case, 3 Co. 7. (2) "A constitution is not to receive a technical construction like a common-law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them:" Commonwealth v. Clark, 7 W. & S. 133; Monongahela Nav. Co. v. Coons, 6 W. & S. 114.

2. The constitution of 1790 declared in the Bill of Rights: "Nor shall any man's property be taken or applied to public use without the consent of his representatives or just compensation being made;" and this clause was repeated in § 10, article IX., of the constitution of 1838. It is ·unnecessary to cite the line of cases beginning, perhaps, with Phila. & T. R. Co., 6 Wh. 42, and ending with Struthers v. Railway Co., 87 Pa. 282, to establish that the person injured by the exercise of the right of eminent domain could not recover unless some of his property was actually "taken." It mattered not how little, so a portion was actually taken, because the owner could then recover not only compensation for the land taken, but also the damages done to his remaining land. Injuries, where no property was taken, were held to be consequential and were not recoverable unless the charter of the particular company imposed liability therefor: O'Connor v. Pittsburgh, 18 Pa. 189; Monongahela Nav. Co. v. Coons, 6 W. & S. 114.

3. To remedy this evil, to suppress this mischief, the clause of the constitution under consideration was adopted. The words "injured or destroyed" were added to cover the cases of consequential injuries not included and relieved against by the word "taken." In endeavoring to ascertain the old law, the mischief and the remedy, what was said by eminent lawyers of the convention is entitled to some consideration. Mr. Meredith said: "Let us try to regulate that and restore it to reason and experience and the protection of the common law, by providing that when these works are made, property injured by them, whether part of that property be taken or not, shall

be entitled to recover damages:" 3 Conv. Deb., 598; Mr. Addricks, Idem 599, 600; Mr. Meredith, Idem 597; Mr. White, Idem 599.

4. This court, in a number of cases arising since the adoption of the new constitution, have uniformly held that the words "injured or destroyed" included damages consequential which, prior to the adoption of that instrument, could not have been recovered: Pusey v. Allegheny, 98 Pa. 522; Reading v. Althouse, 93 Pa. 400; New Brighton v. The U. P. Church, 96 Pa. 331; Penn. R. Co. v. Duncan, 111 Pa. 352; P. & R. R. Co. v. Patent, 17 W. N. 199. It was as consequential damages, and only so, that Mr. Duncan recovered. It was by virtue of the words "injured or destroyed" that he acquired the right to compensation, and not by reason of the interference with his easement over Filbert street in front of his property. Such interference had proved insufficient for a recovery in every similar case from the beginning down to Struthers v. Railroad Co., 87 Pa. 282.

5. The words "injured or destroyed" having been added in the constitutional provision in order to protect those who had suffered consequential damages, who are those entitled to the protection of that clause? Under the general railroad act of 1849, the language of the provision for damages is: "In consequence of the making or opening of said railroad;" which language has been held to include damages for the intended use. "Whatever impediments are caused by the ordinary and proper use of a railroad we attribute to its construction:" BLACK, C. J., in Commonwealth v. Railroad Co., 27 Pa. 339; see also, Railroad Co. v. Yeiser, 8 Pa. 366; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411; Pittsb. etc. Ry. Co. v. McCloskey, 110 Pa. 436; and to the same general effect are: East Penn. R. Co. v. Hottenstine, 47 Pa. 28; West Penn. R. Co. v. Hill, 56 Pa. 460; W. & R. R. Co. v. Stauffer, 60 Pa. 374; Hoffer v. Penn. Canal Co., 87 Pa. 225; Setzler v. Railroad Co., 112 Pa. 56.

6. "Under the new constitution the plaintiff was entitled to compensation for all damages, direct or consequential, which he suffered or might suffer, in consequence of the building and *operation* of defendant's road:" Pittsb. Junc. R. Co. v. McCutcheon, 18 W. N. 527; and to the same effect are: Read-

ing v. Althouse, 93 Pa. 400; Pusey v. Allegheny, 98 Pa. 522. Penn. R. Co. v. Duncan, 111 Pa. 352. We therefore submit that, under the foregoing cases, it is no longer an open question that the words "construction or enlargement" include damages, not only for the erection of a railroad, but also for its intended use or operation.

7. In Penn. R. Co. v. Lippincott, 116 Pa. 472, the opinion says: "It is not alleged that any injury has resulted from the erection of this elevated roadway, nor, indeed, could it truthfully be so alleged, for the erection is on the defendant's own ground, on the south side of the said street, which street is some fifty-one feet wide; so that no part of the plaintiff's property, or any right of way or other appurtenance thereunto belonging, has been taken or used in the erection or construction of said viaduct." But the question of liability is not dependent on the method by which the defendant acquired title to its property. That is not the test of liability. Who are to be liable is fixed by the phrase, "municipal and other corporations invested with the privilege of taking private property for public use." The clause was directed against every individual or corporation possessing this power of the commonwealth to take private property for public use. Neither a corporation nor an individual should ever thereafter claim the commonwealth's immunity from liability as a protection from making just compensation to parties injured by their acts. The mere acquisition of property could do no damage. The law already sufficiently protected the citizen against the taking of his property. The situation that was protected against arose from the *use* of the property acquired for the purposes of the corporation. Moreover, we submit that the latter clause of the above quotation is a direct return to the doctrine of Phil. & T. R. Co., 6 Wh. 42, and of Struthers v. Railroad Co., 87 Pa. 282.

8. It is also said in the case referred to: "It seems to be very clear that a private person could do with impunity on his own property just what the railroad company has done." We ask for no other or greater liability to be imposed upon the railroad company than would be imposed upon an individual in like circumstances. The subjecting of another's property

to a servitude whereby the owner's interest therein is injuriously affected, the continuous doing of something which interferes with another's health or comfort in the occupation of his property, is a nuisance. While a private individual is liable to indictment and in damages for maintaining a nuisance, yet a railroad company, because of the grant to it of the right to construct, maintain and operate a railroad, is invested with the privilege and immunity that a private individual on his own property does not possess: Pittsb. etc. Ry. Co. v. McCloskey, 110 Pa. 436; Pollock on Torts, 330* [Text Book Series, 257]; Brand v. Hammersmith R. Co., L. R. 2 Q. B. 223; s. c., L. R. 4 Eng. & I. App. C. 171; Columbia Bridge Co. v. Guisse, 35 N. J. L. 562; Pottstown Gas Co. v. Murphy, 39 Pa. 257; P. F. W. & C. Ry. Co. v. Gilleland, 56 Pa. 451; West Penn. R. Co. v. Hill, 56 Pa. 465. An individual who would maintain and operate on his own property in the midst of a city a railroad on which he would run locomotives and trains, one every minute of the day and night, with the accompanying noise, soot, smoke, cinders, vibrations, etc., would be liable, first, to an indictment, and second, for all damage that another individual could show he had sustained in his person or estate; and, as the railroad company cannot be restrained from exercising the privilege of maintaining and operating a railroad in accordance with the provisions of its charter, the price of this privilege of inflicting this damage continuously in the future, as declared by the new constitution, is the difference in value of the property injured as affected and unaffected by the maintenance of the nuisance.

9. It was apparent that these large carrying corporations growing year by year, with no other object or purpose but to earn money for their stockholders, would exercise their powers of eminent domain without regard to private right. This, the state, acting in its own interest, which was the common weal of all, never did. It therefore became necessary to add to the word " taken," which had already received judicial construction, the words " injured or destroyed," so as to place the delegates of the state's power on the same footing with all other citizens, denuded of the state's exemption from liability for their acts.

OPINION, MR. JUSTICE PAXSON:

This case is admittedly upon all fours with Penn. R. Co. v. Lippincott, argued and decided at the last term of the court in the Eastern District, 116 Pa. 472. If that decision is to stand, the present case will have to be reversed, as they are in direct conflict. It is only just to the learned judge below to say, that when this case was tried, the decision in Penn. R. Co. v. Lippincott had not been rendered, nor had it been argued here. Two of our number dissented in that case, and two of those who heard the present case did not hear the former. I was abroad at the time, and our brother WILLIAMS was not then a member of the court. In view of these facts and of the grave character of the question involved, we have listened to an elaborate argument involving the same question and have carefully reconsidered it. It has not had the effect, however, of producing any change in the views of the majority of the court. We adhere to the ruling in Penn. R. Co. v. Lippincott, as announced by our brother GORDON. The ground was so fully covered by his opinion that this judgment might well be reversed without a further discussion of the principles involved. I concur fully in the views already expressed, and can hardly hope to throw additional light upon the matter, or to strengthen the argument already made. In view of the fact, however, that we listened to what was practically a reargument, I will add a few words by way of supplement to the previous opinion of our brother GORDON, even at the risk of some repetition.

The plaintiff below is the owner of property on the north side of Filbert street, and brought his action to recover damages for an alleged injury to said property caused by the operation of the defendant's elevated road. The latter is constructed upon land owned by the company, and the entire width of Filbert street intervenes between the railroad and plaintiff's house. He complains of the noise, the dust, smoke, and cinders, and the constant jar caused by the passing trains. He says these causes combined interfere with the enjoyment of his property and lessen its market value. For the purposes of this cause, we must consider his allegations established by the verdict of the jury.

The plaintiff claims to recover by virtue of the constitution

of 1874, section 8 of article XVI. of which provides, that " Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed by the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

It was held in Penn. R. Co. v. Lippincott that the effect of this clause of the constitution was to place corporations upon the same plane with individuals as regards liability for injuries to property, and that it only made a corporation liable where an individual was liable at common law. The correctness of this ruling was conceded by the learned counsel for the plaintiff. He says at page 13 of his printed brief : " We ask for no other or greater liability to be imposed upon this railroad company than would be imposed upon an individual in like circumstances." As, however, other counsel in other cases may not concede so much, I will add a few words to this branch of the case.

If we resort to the familiar rule of interpreting statutes, the old law, the mischief and the remedy, we have no difficulty in arriving at the true construction of the language cited from the constitution. Prior to 1874, the citizen whose property was injured by a corporation in the construction of its works had no remedy therefor unless some portion of his property was actually taken. This was an immunity enjoyed by corporations and not by individuals. Cases of great hardship soon arose. O'Connor v. Pittsburgh, 18 Pa. 187, was one of these. In that case the city by the change of the grade of a street practically ruined a valuable church property ; yet there was no remedy. This court of its own motion ordered a reargument of that case, " in order to discover if possible," in the almost pathetic language of Chief Justice GIBSON, " some way to relieve the plaintiff, consistently with law, but I grieve to say we have discovered none." Instances of a like nature might be cited indefinitely. I have selected this one as an illustration of the principle, and as perhaps one of the. most striking. In all of them, however, there was an injury to the property of the plaintiff in consequence of the erection or construction of the works of the corporation, as by the change of

grade in O'Connor v. Pittsburgh, and the interference with water rights, as in Monongahela Nav. Co. v. Coons, 6 W. & S. 101. In all these cases the property had been seriously injured, and yet no portion of it taken by the offending corporation.

This was the mischief which the constitutional convention had before it when section 8 of article XVI. was adopted by that body, and it was the evil the people were smarting under when they ratified the work of the convention at the polls. The constitution, since 1790, had declared that the property of the citizen should not be taken or applied to public use without just compensation. The constitution of 1874 went further, and declared not only that it shall not be taken but also that it shall not be injured or destroyed by corporations in the construction or enlargement of their works, without making compensation, etc. etc. There is no ambiguity in this language. We have applied it several times to cases arising under it without the least difficulty. We are now asked to apply it, not to injuries to the plaintiff's property, arising from the construction of the defendant's road, but to injuries resulting from the lawful operation of their road without negligence.

Before I proceed to discuss this branch of the case, in order that we may know exactly where we stand, I will refer briefly to the cases we have decided under this clause of the constitution of 1874.

The City of Reading v. Althouse, 93 Pa. 400, was a case where certain springs or streams of water had been diverted from their usual course to supply the city with water. By the act of April 14, 1853, applying to the Reading Water Company, it was provided that where the corporation permanently appropriated to its use such springs or streams as it might select for water purposes, compensation should be made to the owners for damages sustained. In an action against the city by a riparian owner whose stream had been diverted, we held, not only that the action could be sustained under the above act of 1853, but also that it could be maintained under section 8 of article XVI. of the constitution. In referring to this section it was said by Mr. Justice GORDON: " That section provides for the making of compensation, not only for the taking

of private property for public use, as was the case theretofore, but also for its injury or destruction. That the use which the plaintiff made of the waters of the Great, or Antietam creek, through the race or ditch in controversy, was property, though of an incorporeal kind, is not open to debate, and that it was injured by the operations of the city of Reading, is a fact established by the proper tribunal. There is, therefore, no good reason, apparent to us, why the case should not be covered by the above recited eighth section of the constitution."

In the Borough of New Brighton v. United Presbyterian Church, 96 Pa. 331, we had a case before us like O'Connor v. Pittsburgh, and differing only in degree. The borough had changed the grade of a street from two feet and a half in some places to fifteen feet in others, and we held that a property owner injured thereby had a right to damages for said injury under the constitution of 1874, although no such right existed before.

Philadelphia and Reading Railroad Co. v. Patent, 17 W. N. 198, was a case in which the said company, as the lessee of another railroad company, changed the alignment of the tracks of said leased railroad in a certain street in the borough of Manayunk, thereby obstructing the access to a private house fronting thereon, and causing other consequential injury thereto. In an action on the case against the company to recover damages for such injuries, it was held that while the plaintiff was entitled to recover upon other grounds, the case came nevertheless within the constitution of 1874.

In Penn. R. Co. v. Duncan, 111 Pa. 352, the plaintiff was allowed to recover in an action on the case for damages to his property caused by the construction of defendant's road. The road was so near his property as to deprive him of the use of Filbert street as a highway, and of 400 feet of building front on said street. It is true Justice GREEN and myself dissented in that case, but it was upon the single ground that the company had paid $7,000,000 to the state for its property and franchises; had succeeded to all the rights of the state, including the right to construct its road without liability for consequential injuries, and we were unable to see how the state could avoid its contract by amending its constitution. But we were all of opinion that but for this single reason, the case came clearly within the constitution of 1874.

County of Chester v. Brower, 117 Pa. 647, decided at the present term, was a case where the county had erected a bridge over French Creek in the borough of Phœnixville, and in the construction of the abutments or approaches to the bridge had built a wing wall nine feet six inches in height, immediately in front of plaintiff's houses and only seven feet distant therefrom, thereby seriously interfering with his access thereto, and his reasonable use and enjoyment of the same. We held, affirming the court below, that the plaintiff was entitled to recover damages for this injury in an action on the case. This was following directly in the line of the Penn. R. Co. v. Duncan. It will be observed that they are all cases where the injury arose from the construction of the road. In no one of them was there a claim for what are popularly called consequential damages, arising from the operation of the road after its completion.

It will be noticed that all our cases decided prior to the constitution of 1874, in which compensation was denied for what are called consequential injuries, were instances in which the injuries were the result of the construction of the road; while all our cases decided since 1874, and which came under the section thereof referred to, likewise involved only injuries resulting from construction. The only exception is the case of Penn. R. Co. v. Lippincott, before referred to, and two or three other cases resting upon the same principle, and which were argued and decided with it, and in each of which the right to recover was denied.

The question whether under the constitution of 1874 a corporation is responsible not only for property taken, injured, or destroyed in the construction or enlargement of its works, but also for injuries or inconveniences the result merely of the operation of its works, is a question of such supreme importance, and of consequences so far-reaching, that we approach its discussion with caution. If it is the mandate of the constitution it must be obeyed. It is our duty to give effect to the will of the people lawfully expressed, and we shall perform it though it stops every wheel in the commonwealth. But it is no part of our duty to write into the constitution something which the people have not placed there.

Just here, it is proper to say, there is not a word about "con-

sequential " injuries in the constitution. The word itself has acquired a broad, popular meaning by which many persons may be misled. In judicial proceedings it should be used intelligently and with due regard to its proper meaning. In its application to the constitution we understand it to mean an injury to a man's property, the natural and necessary result of the construction or enlargement of its works by a corporation; an injury of such certain character that the damages therefor can be estimated and paid or secured in advance as provided in the constitution. And attention is again called to the cases which I have cited, and in which the constitutional provision has been invoked, and in all of which there has been an actual, · positive, visible injury, the necessary result of the original construction.

· In considering a new question it is sometimes useful to carry it out to its logical conclusion and see where it leads us to. It is true the argumentum ab inconvenienti is entitled to but little force in the face of a plain mandate of the constitution. But it is a persuasive argument in construing language which is capable of more than one interpretation, and especially is it so, when we are asked to amend the constitution by a judicial decree.

If we hold that property owners on Filbert street are entitled under the constitution to recover for the injuries complained of in this case; in other words, that it embraces injuries the sole result of the lawful operation of the defendant's road, where are we to stop in its application? Where is the line to be drawn? If property owners on Filbert street may recover, why not those on Arch street, and Race, and so on north and south, east and west, as far as the whistle of the locomotive can be heard, and its smoke can be carried? The injury is the same, it differs only in degree. And it does not stop here. The constitution does not apply to railroads merely. It affects all corporations clothed with the power of eminent domain, including cities, boroughs, counties, and townships; it is applicable to canals, turnpikes, and other country roads. If, by judicial construction, we extend the constitution to all the possibilities resulting from the lawful operation of a public work; to all kinds of speculative and uncertain consequential injures, we shall find ourselves at sea, without chart or com-

pass to guide us. Were we to adopt such a construction we would be compelled, to use the language of Chief Justice SHAW, in Proprietors of Locks and Canals v. Nashua & Lowell Railroad Company, 10 Cush. 385, to extend it "to turnpikes and canals, the value of which is diminished or destroyed by loss of custom, to taverns and public houses deserted or left in obscurity; to stage-coach proprietors and companies, to owners of dwelling houses, manufactories, wharves, and all other real estate in towns and villages, from which the line of travel has been diverted. If it can extend to the next estate beyond the one crossed or touched by the railroad, why not to the next, and the next, which may be affected less in degree, but in the same manner?"

It is very plain to our view that the constitutional provision was only intended to apply to such injuries as are capable of being ascertained at the time the works are being constructed or enlarged, for the reason among others, that it requires payment to be made therefor, or security to be given, in advance. This is only possible where the injury is the result of the construction or enlargement. For how can injuries which flow only from the future operation of the road, which may never happen, be ascertained in advance, and compensation made therefor?

It remains to say that if the construction of the constitution contended for be correct, then we have a liability imposed upon corporations in the operation of their works which is not now, and never has been, imposed upon individuals. No principle of law is better settled than that a man has the right to the lawful use and enjoyment of his own property, and that if in the enjoyment of such right, without negligence or malice, an inconvenience or loss occurs to his neighbor, it is damnum absque injuria. This must be so, or every man would be at the mercy of his neighbor in the use and enjoyment of his own. In the late case of the Pennsylvania Coal Company v. Sanderson, 113 Pa. 126, it was said by our brother CLARK: "Every man has the right to the natural use and enjoyment of his own property, and if, whilst lawfully in such use and enjoyment, without negligence or malice on his part, an unavoidable loss occurs to his neighbor, it is damnum absque injuria, for the rightful use of one's land may cause damage to another without any legal

wrong." No man is answerable in damages for the reasonable exercise of a right, where it is accompanied by a cautious regard for the rights of others; where there is no just ground for the charge of negligence or unskilfulness, and when the act is not done maliciously: Panton v. Holland, 17 Johns. 99. We need not consume time by the further citation of authorities for so plain a proposition. It is settled law.

It was not contended that the injuries of which the plaintiff complains, are in any degree the result of the negligent or unskilful operation of defendant's road. On the contrary, they have expended many millions to enable them to handle their business, and convey their passengers and freight into the heart of the city, with the least possible annoyance to persons and injury to property. As was well observed by our brother GORDON, in the Penn. R. Co. v. Lippincott, the company might have hauled their enormous freight in carts or drays along Filbert street to its present terminus, and no one would have had a legal cause of complaint, though it is easy to see that the condition of property owners on that street would have. been far more intolerable in such case than it is at present.

This brings us to the question whether in case a natural person were the owner of this road, and were operating it in the manner that the defendant company are now doing, he would be responsible to the plaintiff in damages. We answer this question in the negative. He would not be responsible, for the reason above given, viz., that he would have a right to the reasonable use and enjoyment of his property, and if, in such use without negligence or malice, a loss unavoidably falls upon his neighbor, he is not liable in damages therefor.

It is true this principle is qualified to a certain extent. A man may not carry on a business which poisons the air, and renders it unhealthy in a thickly populated neighborhood, and especially in the centre of a large city. For establishments which involve danger, such as powder-mills; injuries to health, such as lead-works, and manufactories of various kinds, which involve noise and disturbance to neighbors, a man must seek a secluded place, where as few persons may be inconvenienced as possible. These exceptions to the general rule are well established, and need not be further dwelt upon. But they have no application to the case in hand. The necessities of a rail-

road company and the character of its business compel it to seek the heart of a great city. This is as much for the convenience of the public as for its own. Hence the transportation of passengers and freight as near to the centre of a town as possible, is in the direct line of its duty, whether that duty be performed by a corporation or individual. It is a part of the lawful use and enjoyment of property, and, where it is done without negligence, entails no legal liability therefor.

The proper use of such a work as this is a matter of great public concern. That it may also put money into the treasury of a corporation is aside from the question. The fact remains that it is a great public benefit, essential not only to the success of the business interests of the city, but to other cities and other places as well. It is a metallic nerve which thrills and vibrates from one end of this vast country to the other. There are some inconveniences which, as was decided in Pennsylvania Coal Company v. Sanderson, must be endured by individuals for the general good; otherwise, we would have an Utopia, where the whistle of the locomotive, the hum of the spindle, and the ring of the hammer are never heard. It might be pleasant to dwell where there is nothing to offend the eye, the ear, or any of the senses, but in this age of rapid development in every branch of industry, it would be difficult to find such a spot in the vicinity of our large cities.

We understand the word "injury" (or injured), as used in the constitution, to mean such a legal wrong as would be the subject of an action for damages at common law. For such injuries, both corporations and individuals now stand upon the same plane of responsibility.

That I am correct in the meaning we attach to the word "injured," appears abundantly by our own authorities. This was clearly shown by our brother GORDON in Penn. R. Co. v. Lippincott. In addition to the authorities there cited by him, I will add Lehigh Bridge Co. v. Lehigh Coal and Nav. Co., 4 R. 23; Pittsburgh and Lake Erie R. Co. v. Jones, 111 Pa. 204.

It is not necessary for us to look outside of our own state for authorities in construing our own constitution. It may not be out of place, however, to say that in England, where they have statutes containing provisions bearing a close analogy to our constitution, and which give damages to persons whose

property, though not taken, is yet "injuriously affected by the construction" of public works, such damages are not extended to injuries resulting from the operation of the road. It was said by Lord WESTBURY in Rickett v. Railway Company, L. R. 2 Eng. and Irish Appeals, 198: "I agree with the distinction that has been taken between damage resulting from the railway when complete, or from the act of making it, and damage occasioned by the proper (not negligent) use of the railway when made. No claim can be made for loss resulting from the use of a railway. . . . Compensation is given by the statute only to individuals who in respect of the ownership or occupancy of lands or tenements sustain loss in or through the construction of the railway, or the execution of the incidental works." To the same point are Hammersmith and City Railway Company v. Brand, L. R. 4 Eng. and Irish Appeals, 171; Caledonian Railway Company v. Walker, L. R. 7 Appeal Cases, 259; Penny v. Southeastern Railway Company, 7 E. & B. 660; Glasgow Union Railway Co. v. Hunter, L. R. 2 Scotch Ch. Div. Appeals, 78.

The language of the constitution is not equivocal and is entirely free from ambiguity. The framers of that instrument understood the meaning of words, and many of them were among the ablest lawyers in the state. Two of them occupy seats upon this bench. Hence, when they extended the protection of the constitution to persons whose property should be injured or destroyed by corporations in the construction or enlargement of their works, we must presume they meant just what they said; that they intended to give a remedy merely for legal wrongs, and not for such injuries as were damnum absque injuria. Among the latter class of injuries are those which result from the use and enjoyment of a man's own property in a lawful manner, without negligence and without malice. Such injuries have never been actionable since the foundation of the world.

Judgment reversed.

MR. JUSTICE STERRETT, dissenting:

This contention, involving the same questions that were presented in Penn. R. Co. v. Lippincott and others, 116 Pa. 472, hinges on the construction of article XVI., section 8, of the constitution, viz.: "Municipal and other corporations and

individuals, invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured, or destroyed in the construction or enlargement of their works, highways, or improvements, which compensation shall be paid or secured before such taking, injury, or destruction."

In effect, the obligation thus ordained is written into every grant of power to take private property for railroad purposes, or for any other specified public use, and requires the grantee of that privilege to make just compensation, not only for property actually taken, as was the case under former constitutions, but also for property injured or destroyed in consequence of the legitimate exercise of the grant, in the manner, and for the purposes contemplated by the charter of the company: Penn. R. Co. v. Duncan, 111 Pa. 352. If it is insisted on, that compensation must be paid before such injury or destruction. We have, accordingly, held, very recently, in O'Brien v. Penn. S. V. R. Co., ante, 184, that if compensation for such consequential injury to adjacent real estate be not paid or secured in advance, suit may be brought immediately after the work is undertaken, in which all damages, past as well as prospective, may be recovered; that the injury, for which the constitutional remedy has been provided, is single and indivisible, and, consequently, only one action will lie therefor.

The injury to private property, no part of which is actually taken, resulting from carrying out, with reasonable and proper care, the public purposes for which a corporation is created and invested with the right of eminent domain, is regarded in the nature of a servitude, fastened on the injured property by the locum tenens of the commonwealth for the public benefit, for which compensation is to be made in advance, and once for all. The constitution places such claims for compensation on precisely the same footing as claims for damages resulting to private property from an actual taking of a part thereof for public use.

The history of the section under consideration and the evils intended to be remedied thereby are too generally familiar to require extended notice, but in view of the importance of the subject, it may be well to state briefly how the provision, in its present form, came to be incorporated in the constitution.

Under the provisions of the common law, every public improvement was preceded, if necessary, by a writ of ad quod damnum to ascertain what damages, if any, subjects of the Crown would sustain thereby : 1 Black. Com., 139 ; but Penn's Concessions of 1681, 3 Y. 372, had the effect of so relaxing that wholesome rule that compensation for private property taken for such public purposes as turnpikes, etc., was provided for, if at all, by the legislature, as matter of grace and not of right. Then followed the constitutional guaranty of the people themselves, substantially re-ordained in 1838, prohibiting their representatives from investing "any corporate body or individual with the privilege of taking private property for public use without requiring such corporation or individual to make compensation to the owner or owners of said property, or give adequate security therefor, before such property shall be taken : " Const. 1838, article VII., section 4. In the absence of special charter obligation or legislative provision more comprehensive and stringent than the section just quoted, corporations were not liable for anything short of an actual taking. In other words, without such taking they were never liable, under that section, for what are termed consequential damages. Cases of extreme hardship arose in which private property, no portion of which was taken, was greatly damaged in consequence of the lawful exercise of corporate authority delegated for public purposes. Monongahela Navigation Co. v. Coons, 6 W. & S. 101, and O'Connor v. Pittsburgh, 18 Pa. 189, are illustrations of this. In the former, the company, under legislative authority, constructed dams in the Monongahela river, one of which caused backwater for several miles, in a tributary of that river, and greatly injured Coons' mill located thereon. This court, reversing the judgment obtained by him for the damages, said : " The plaintiff's mill was not taken or applied, in any legitimate sense, by the state or by the company invested with its power, nor can it be said that he was deprived of it. . . . . . The state is not bound beyond her will to pay for property which she has not taken to herself for public use." Subsequently, however, the legislature provided a remedy under which the owner of the mill was compensated for the damages resulting from the construction and maintenance, of the dam : Mon. Nav. Co. v. Coons, 6 Pa. 379.

O'Connor v. Pittsburgh was a case of still greater hardship. Chief Justice GIBSON declaring " it is inequitable to injure the property of an individual for the benefit of the many," and suggesting that the legislature should provide a remedy, said: " To attain complete justice every damage to private property ought to be compensated by the state or corporation that occasions it, and a general statutory remedy ought to be provided to assess the value.  The constitutional provision for the case of private property taken for public use extends not to the case of property injured or destroyed; but it follows not that the omission may not be supplied by ordinary legislation.  No property is taken in this instance ; but the cutting down of the street consequent on the reduction of its grade left the building useless and the ground on which it stood worth no more than the expense of sinking the surface of it to a common level. The loss to the congregation is a total one, while the gain to the property-holders in the neighborhood is immense.  The legislature that incorporated the city never dreamt that it was laying the foundation for such injustice, but, as the charter stands, it is unavoidable."

This is perhaps the first appeal that came from the Bench in behalf of the necessity for some general provision requiring compensation for property " injured or destroyed," in addition to the then existing remedy for property actually taken for public use ; and, while no general measure of relief was provided by the legislature, the subject was never lost sight of by the people until it was incorporated in the present constitution.

When the constitution of 1838 was adopted railroads were in their infancy; but they soon multiplied rapidly, and the legislature in providing liberally for their needs, on the one hand, and for the protection of private property rights, to some extent, on the other, enacted laws by which a mode of compensation was provided not only for property taken, but also for injuries resulting to the residue of a property, part of which only was taken for railroad purposes.  These, together with similar provisions in special cases, were a great advance on the constitutional guaranty of 1838, which, as we have seen, required compensation only for property actually taken; but they left unprovided for cases of direct and serious injury and damage to adjacent private property, no part of which was

actually taken for public use; and, when the people resolved to change their organic law, they determined to provide specially, not only for that omission, among others, but also to place the whole subject beyond the control of their representatives in the legislature. No one familiar with the history of the times or who reads the debates in the constitutional convention can for a moment doubt the accuracy of this statement.

Referring to the justice and necessity of requiring compensation for damages to adjacent property, no part of which is taken, resulting from the construction and careful operation of railroads, a distinguished delegate from Philadelphia said: " When a railroad runs through a man's property, close to his barn or house, you take into view the disadvantages caused by the close proximity of the road, the danger of fire, the annoyance from sparks, smoke, etc. . . . . But, if the road was not to run through the man's property, but near it, no matter what injury to his property, he would get just nothing:" 3 Conv. Deb., 589. The rule as to the measure of damages, here referred to, is the familiar one adopted in Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411, and recognized in so many of our cases, among the last of which is Setzler v. Railroad Co., 112 Pa. 56, namely, the difference between what the property would have sold for before the construction of the road and what it would have sold for after the road was completed, taking into consideration the risk of fire necessarily incident to the proper and legitimate use of locomotives, and all such matters as, owing to the peculiar location of the road, may affect the convenient use and future enjoyment of the property, and excluding everything of a speculative nature.

On the same subject, the distinguished president of that body said: " There is no reason why a man in the neighborhood of a public work, injured by the construction of it, should not recover damages just as much if his property is not taken as if it is. For instance, the corner of a man's farm is taken; he comes for damages. What is the injury done to him by that in the taking of his property? It is the value of the part of the farm taken; but the value of the whole has been injured; that is, his property in the vicinity of the work has been injured. He recovers damages every day for that; and yet, if it so happens that they must go just an inch outside of the corner of

his farm, and he may be equally injured, he cannot, under this blind clause, as I may call it, in our present constitution, recover a dollar of damages. Sir, let us try and regulate that, and restore it to the reason and the experience and protection of the common law, by providing that when these works are made, the property injured by them, whether part of that property is taken or not, shall be entitled to recover damages; that is, if the value of the property in the neighborhood is depreciated, its owners shall recover the difference between what the property would have sold for before the work, and what it would sell for afterwards:" 3 Conv. Deb., 597.

These learned gentlemen not only "understood the meaning of words," but they accurately voiced the views and purposes of those who framed the section in question, and also of the people by whom it was ratified.

Another phase of the evil, just referred to, was the injury to abutting property owners by the authorized location and maintenance of railroads on streets and other public highways. In a long line of cases, prior to the adoption of the present constitution, commencing with the Phil. & Trenton Railroad Co., 6 Wh. 25, it was held that the constitutional provision of 1838 did not prohibit the legislature from granting to a railroad company the privilege of constructing and operating a railroad on public streets or highways without requiring compensation to be made to abutting property owners, and, however much their property might be injured and depreciated in consequence thereof, they were without redress. Cleveland & Pittsburgh Railroad Co. v. Speer, 56 Pa. 325, is a case in which a verdict for $1,362.50 damages, caused by noise, smoke, offensive smells, etc., whereby plaintiff was deprived of the proper enjoyment of his dwelling, etc., was set aside, because the railroad company was lawfully occupying the street without any obligation to make compensation for any injury resulting from the legitimate operation of its road.

These are some of the evils that called loudly for a constitutional remedy; and, from the history of the section adopted, and everything connected therewith, it is perfectly clear that it was the purpose of its framers, as well as the people they represented, to prevent the building of railroads or the prosecution of any great public enterprise at the involuntary ex-

pense or sacrifice in property of any private citizen, either for construction, maintenance, or operation. This is so plainly written on every page of that history that the wayfarer, though not learned in the law, cannot fail to read and understand.

In view of all the foregoing and other considerations, it was deemed just and equitable to make general and permanent provision for compensation for property injured or destroyed without actual taking, as well as for property taken for public use. The result was the adoption of the 8th section, first above quoted. As we have already seen, it differs materially from the old provision, not only in form, but in comprehensiveness. While the former is merely an inhibition on the legislative power to delegate the right of eminent domain, the latter, without restricting the exercise of that power, defines a class of persons, artificial and natural, and makes it obligatory on them to compensate the owners of property either taken, injured or destroyed in the lawful prosecution of the work or business for which they are respectively invested with the right of taking private property for public use.

From what has been said it might appear strange there should ever have been any serious difference of opinion as to the meaning of the section; but, while those affected by it knew they were bound, as before, to pay for property actually taken, there was a backwardness on the part of some in recognizing the just measure of their obligation to persons whose property had been injured, but not taken, by them in the exercise of their corporate authority, and accordingly several cases arose, involving the question of liability for injuries to the residue of property, part of which had been taken, and also cases grounded solely on injuries to adjacent private property without any taking. Pusey v. Allegheny City, 98 Pa. 522, is an instance of the former. In that case, after reciting the section under consideration, it is said: " This is an advance upon the limitation of the right of eminent domain as found in the Bill of Rights, both of the present constitution and that of 1838. Corporations in whom the legislature has vested this right are by this section made liable for damages resulting to private property from the construction, use or alteration of their works, ways or improvements ; in other words, to such damages as are ordinarily called consequential. This being

now the supreme law of the land, it must govern the case under consideration, and it is idle to recur to decisions and legislation, the authority of which, as to all present and future cases, is by this provision annulled." Other cases of the same class might be cited, in which the same construction is recognized and adopted, viz., that compensation is to be made for injuries resulting from the use or operation as well as from the construction or enlargement of public improvements, but it is unnecessary. That construction had become so generally understood and acquiesced in that, in Penn. R. Co. v. Duncan, supra, a case grounded solely on injury resulting partly from construction, but chiefly from legitimate operation of the railroad, counsel did not think worth while to insist on the position that the constitution makes no provision for injuries resulting from operation, but only from construction of the road, strictly considered. The property in that case, shown to have been injured to the extent of $20,000, almost exclusively by the operation of the road, is also situated on the north side of Filbert street near the company's viaduct, but, like the plaintiff's in this case, no part of it was taken or even touched by the railroad. The case was confessedly one in which plaintiff would have been utterly remediless except for the word "injured" in the section under consideration.

Pittsb. Junction Railroad Co. v. McCutcheon, 18 W. N. 527, was also a case involving simply the question of injury, without any taking whatever. The plaintiff below was tenant for a term of years of the property injured by the construction and legitimate operation of the company's elevated road in the city of Pittsburgh. Under the old constitution he would have been absolutely remediless. The action as amended and tried was case, grounded solely on the word "injured." There was a verdict in his favor for $1,116; and, on writ of error to this court, the judgment was affirmed in a per curiam opinion by the present Chief Justice, in which it is said, inter alia: "Under the new constitution the plaintiff was entitled to compensation for all the damages, direct and consequential, which he suffered or might suffer in consequence of the building and operation of defendant's road." The word operation was not inadvertently used in that case. The plaintiff's claim for damages, like the claim in Railroad v. Duncan, supra, depended

almost entirely on the question whether the company was liable for injuries resulting from the use or operation of its road. All the rulings of the court, so far as they were excepted to and assigned for error, were affirmed. One of them was the refusal of the court to charge as requested: "That no damages can be recovered in this action for injuries resulting from the operation of the road after its construction." Another was the refusal to charge, "that damages arising from noise, smoke and dirt in the passage and re-passage of trains upon the road, are not to be taken into consideration in estimating plaintiff's damages in this case." Another was, in charging that "the ordinary danger from accidental fires to the buildings, not resulting from negligence, and generally, all such matters as, owing to the peculiar location of the road, may affect the convenient and future enjoyment of the property, are proper subjects for consideration."

These and other rulings, to the same effect and in full accord with previous deliverances of this court, were affirmed without dissent. They are quoted at some length, because the elements of damages and the principles involved are, in my judgment, identically the same as in the present case, and the cases of Penn. R. Co. v. Lippincott and others, supra.

The present suit was brought by the owner of house and lot No. 1711, fronting on the north side of Filbert street, Philadelphia, to recover damages for injuries resulting from the construction and legitimate use of the company's viaduct or elevated railroad as a public highway for the transportation of passengers and freight. The road, known as the Filbert street extension, commences near Thirty-second and Market streets, and running eastwardly crosses the Schuylkill opposite Filbert street, and thence east, longitudinally and over the cartway of that street, to a point near Twenty-second street, where it leaves the street and runs thence along the south line thereof to Fifteenth street at Broad street station. From the river to the point where it curves and passes to the south side of the street, the superstructure over the cartway of the street is supported by a sufficient number of high iron pillars set in the street, near the sidewalks thereof, leaving the cartway as well as the sidewalks otherwise unobstructed. From the point where it passes to the south side of the street, the superstructure rests upon

substantial brick walls, about twenty feet high, and arches spanning the intervening cross streets. From the river to Twenty-second street the northerly side of the viaduct is a few feet south of the north line of Filbert street, and from the curve where it leaves the street to its terminus at the station it runs parallel with and fifty-one feet from the northerly side thereof.

The proof of material and direct damage to plaintiff's property, resulting from the construction of the viaduct, the noise of over 1400 passing and repassing trains daily, the consequent emission of steam, sparks, cinders, smoke, etc., and vibration to the extent of cracking the walls of the house, was clear and convincing. According to the testimony, the effect on the house was such as greatly to impair its value and render it almost uninhabitable; and, under a fair and impartial charge submitting the question of damages to the jury, the verdict was in favor of plaintiff for $4,980, from 30 to 40 per cent. of the estimated value of the property before the road was constructed.

Relying on the recent ruling in Penn. R. Co. v. Lippincott and others, supra, it is now proposed to reverse the judgment and virtually hold, as was done in that case, that, as to this and all similar cases, the constitutional obligation, to make just compensation for private property injured in consequence of the exercise of authority delegated to the company for the public benefit, is a mere rope of sand, notwithstanding that obligation is virtually written into the only warrant the company has for doing what it has done in the past, and what it may rightfully do in the future.

It is thus apparent that the question is one of more than ordinary importance and far reaching in its consequences. With great deference to the judgment of those who see the matter in a different light, I have therefore ventured to cite some authorities and offer some suggestions, bearing on the construction of the section in question and in support of what appears to me the manifest justice and legality of the judgment of the court below.

For some time prior to the ruling in Penn. R. Co. v. Lippincott et al., supra, and especially after the decisions in the Duncan and McCutcheon cases, supra, it was confidently believed that every doubt as to the meaning of that section had been dis-

pelled, and that thenceforth the just and equitable provisions of the constitutional obligation to make compensation, not only for property taken, but also for property injured or destroyed, by those "invested with the privilege of taking private property for public use," would be enforced in the same spirit of fairness and justice in which they were conceived and afterwards adopted by the people as part of their organic law; and that, too, without stopping a single wheel, or relegating anybody to that dreaded " Utopia where the whistle of the locomotive, the hum of the spindle, and the ring of the hammer are never heard." But, that well grounded belief, warranted, as I think, alike by the language of the constitution and repeated deliverances of this court, was at least sadly shaken by the decision referred to. If time permitted it would not be difficult to show that it is contrary to the spirit, if not to the letter of the constitution, and in a very large class of cases, subversive of rights of property guaranteed by that instrument.

Plaintiff in that case, and three other property owners, all on the north side of Filbert street, claiming to be within the protection of the constitution, severally brought suits for damages resulting, as in the case of the present plaintiff, from the construction and legitimate use of the company's road, and after fair trials, in which the court below followed the previous rulings of this court in the cases referred to, they obtained verdicts aggregating over $29,000, which, on writs of error, were set aside ; the majority holding, in substance, that inasmuch as " no part of plaintiff's property, nor any right of way or other appurtenance thereunto belonging has been taken or used in the erection or construction of said viaduct," there has not, nor could there be, any injury to their property resulting from the construction of the viaduct; and, as to damages caused by the maintenance and proper use of the road for its intended purposes, there could be no recovery, because adjacent property thus injured is not within the protection of the constitution. The sum and substance of that decision is, that notwithstanding plaintiffs below were confessedly injured. and damaged to a very large amount by the company's exercise of delegated authority, they were as remediless as they would have been under the old constitution.

Such a narrow construction of the section under considera-

tion was never dreamed of by those who took an active part in moulding it into its present form, as the debates of the convention will show; nor was it so understood by the people who adopted it; nor is it the construction theretofore clearly recognized and adopted by this court in several cases, some of which have been specially mentioned.

The crowning vice of the construction is in restricting the words "injured or destroyed" to such injuries as result wholly from construction alone, and holding there can be no recovery for injuries resulting from the use of the road for the very purposes for which its construction was authorized by the legislature. If such substantial and permanent structures were designed to be temporary things of beauty on which to feast the eye, there might be some reason in this; but who does not know that they are to be maintained perpetually in the prosecution of the business for which the company was incorporated? In the case of actual taking, whereby the company acquires an easement or right of way over the property appropriated, the purpose for which the servitude is thus fastened upon the land, the duration and manner of enjoyment, the injury to remaining land resulting therefrom, are all taken into consideration. Why should not this be done also, where there is a direct and manifest injury unaccompanied by actual taking? It was so held in the cases of Railroad v. Duncan and Railroad v. McCutcheon, supra, both of which were cases of injury resulting from operation of the respective roads without any taking. It may be asserted without fear of successful contradiction that in principle they are both identical with the present and other Filbert street cases. How comes it then that the judgment for damages to Duncan's property on the same side of Filbert street was affirmed, and the judgments in favor of Lippincott and others, for precisely the same kind of damages, are reversed? It was only because of a radical and unwarranted departure from the theretofore recognized and correct construction of the section in question, which, as we have seen, was intended to protect private property from virtual confiscation to the extent that it is directly and necessarily damaged for the public benefit and the benefit of the locum tenens of the state.

This unjust and inequitable result was made possible only

by ignoring, or rather reversing, the cardinal rules of construction applicable to remedial statutes, and more particularly to constitutional provisions for protection of person or property. The object of construction, as applied to the latter, is to give effect to the intent of its framers and the people in adopting it. The words of a constitution, being the language of the people, are to be taken in their popular, natural, and ordinary meaning, rather than in a strictly literal, or in a technical sense, unless the context, or the very nature of the subject, indicates otherwise: Cooley Const. Lim., 55; 1 Story Const., 400. Speaking of the duty of resolutely upholding provisions intended for security of person or property, Mr. Justice BRADLEY, in Boyd v. United States, 116 U. S. 685, says : " Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy and leads to gradual depreciation of the right as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be, obsta principiis."

Our own books are full of cases illustrating the wisdom and justice of the rule referred to. In Buckwalter v. Bridge Co., 38 Pa. 281, the company's charter provided that if the bridge was located "within half a mile " of Buckwalter's ferry, referees should be chosen "to assess the damages which said Buckwalter may sustain by reason of the erection of said bridge." The referees found that the ferry would "be depreciated by reason of the erection of said bridge, as proposed, within half a mile of said ferry, by diversion of the travel thereupon," and they accordingly assessed the damages at $1,200. The award was excepted to and set aside because " diversion and loss of travel" were not such an injury as is contemplated by the words of the charter; but, this court sustained the construction given by the referees to the words, " by reason of the erection of said bridge," and reinstated the award, holding that these words comprehended the purpose for which the

bridge was erected and the use intended to be made of it, and hence the owner of the ferry was entitled to compensation for the depreciation of his ferry resulting from the diversion of travel from it to the bridge.

If the court had been disposed to stick in the bark and adopt a narrow but perhaps literal construction of the bridge company's charter, it might have impaled the ferryman on a very sharp point, by holding that the words of the charter meant damages resulting solely from the erection of the bridge, and not from the use of it after it was erected, but such a construction would have been manifestly erroneous and unjust.

Again, in Lycoming Gas and Water Co. v. Moyer, 99 Pa. 615, the charter provided that, "if in the location of said works an injury shall be done to private property and the parties cannot agree," viewers shall be appointed, etc. The company having located its works with the view of utilizing, in part, the water of a certain stream, whereby, when the works were put in operation, the flow of water from the stream through a mill-race below was considerably diminished, it was held that the owner of the mill-race, though not injured by the location of the works, strictly considered, was nevertheless within the protection of the obligation of the company to make compensation for injury to private property done "in the location of" its works, and therefore entitled to damages for the injury he had suffered, and would thereafter sustain, by the diminution of flow in his race, estimated on the footing of the continuing and permanent use to which part of the water of the stream was intended to be applied. Authorities, of like import, might be multiplied almost indefinitely, showing conclusively that remedial statutes intended to protect private rights, are never narrowly and literally, but always liberally construed, so as to effectuate the object intended; but those already cited must suffice. The rule of construction for which I contend is distinctly recognized by our brother PAXSON in the very recent case of Chester County v. Brower, 117 Pa. 647, wherein, referring to the same section now under consideration, he says: "The language of the constitution is to be construed liberally, so as to carry out and not defeat the purpose for which it was adopted." If the slightest degree of that liber-

ality had been exercised in this case, the plaintiff below, damaged to the extent of nearly $5,000 as established by the verdict of the jury, could not have been turned out of court without a cent.

In the opinion of the majority, in this case, the question is suggested : " Whether in case a natural person were the owner of this road and were operating it in the manner that the defendant company are now doing, he would be responsible to plaintiff for damages?" and it is promptly answered in the negative, " for the reason . . . . . that he would have a right to the reasonable use and enjoyment of his property, and if in such use, without negligence or malice, a loss unavoidably falls upon his neighbor, he is not liable in damages therefor." This is a broad and sweeping proposition ; and, in view of the established facts of this case, I venture, with great respect and deference, to suggest that it is as unsound as it is broad. If a private person can acquire control of property on one side of a populous street, in the heart of a city, and so use it, for an extraordinary purpose, as to permanently damage property on the opposite side of the street to the extent of 30 to 40 per cent. of its market value, and not be liable, the maxim, Sic utere tuo ut alieno non lædas, is practically obsolete and the law of nuisances must be modified accordingly : Pollock on Torts, 330 ; Wood on Nuisances, 577, 584, 603, 679, 693 ; Pottstown Gas Co. v. Murphy, 39 Pa. 257 ; Bridge Co. v. Guisse et al., 35 N. J. L. 558, 564.

Conceding, for argument's sake, that the word injury, or "injured," as used in the constitution, means "such a legal injury as would be the subject of an action for damages at common law," and that "for such injuries both corporations and individuals now stand upon the same plane of responsibility," it is very clear that the facts of this case, as established by the verdict, unquestionably furnish the grounds for such an action ; and if it were not for the authority, vested in the railroad company by the legislature, to do the acts complained of, for the public benefit, such action would undoubtedly lie against it. But, as we have seen, the company's warrant to do these acts is coupled with the obligation to make compensation for the injuries resulting therefrom ; and hence it should be required to do so.

The argumentum ab inconvenienti, that if the Filbert street property owners were permitted to recover, the door would be thrown wide open to every property owner, at every point of the compass, and "as far as the whistle of the locomotive can be heard or its smoke can be carried," to bring suit for damages, is more imaginary than real; and it may be answered by the fact that the road has been completed and in operation for about seven years, and no such suits have ever been heard of, nor is it likely that they ever will be, because under our recent ruling in O'Brien v. Railroad Co., supra., all such actions are now barred by lapse of time. But, if it were otherwise, what have such considerations to do with the construction of a clause in the constitution? Surely it is not to be so construed as to exclude meritorious claimants who are within its protection, because possibly the number of claimants might happen to be undesirably large. It is well settled, moreover, that there never can be any recovery for remote, uncertain, and speculative damages.

This contention involves other matters worthy of special notice, but want of time precludes their consideration at present. Enough has been said, however, to show that the departure, as I regard it, in Penn. R. Co. v. Lippincott and others, was a mistake that ought to be promptly corrected; and I would therefore unhesitatingly affirm this judgment.